869 F.2d 822
 57 USLW 2610
 UNITED STATES of America, Plaintiff-Appellee,
v.
Suzie WHITE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel Angel ORTEGA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael W. CHAMBLESS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mobud OKABE, a/k/a Masami Machibda, a/k/a Tony Okabe,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert LEMOINE, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus VENEGAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge SOLTERO, and Alexander Rodriguez, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro Otoniel VALDEZ-TREVINO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Keri Lynn HUKEL, Defendant-Appellant.
 Nos. 88-1073, 88-1247, 88-3215, 88-3233, 88-3389, 88-1410,
88-1424, 88-1354 and 88-2259.
 United States Court of Appeals,
Fifth Circuit.
 March 31, 1989.
 
 Thomas S. Morgan (Court-appointed), Midland, Tex., for White.
 Karen Skrivseth, Atty., Appellate Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for U.S. in No. 88-1073.
 John R. Steer, David E. Anderson, Deputy Gen. Counsels, U.S. Sentencing Com'n, Washington, D.C., for amicus U.S. Sentencing Com'n.
 Christine W. Kelso, Asst. Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for Ortega.
 LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Clifford R. Cronk, Asst. U.S. Atty., El Paso, Tex., for U.S. in No. 88-1247.
 Patti A. Goldman, Public Citizen Litigation Group, Washington, D.C., Virginia Laughlin Schlueter, Asst. Public Defender, John T. Mulvehill, Federal Public Defender, New Orleans, La., for Chambless.
 Robert J. Boitmann, Asst. U.S. Atty., John Volz, U.S. Atty., Gerry Deegan, Asst. U.S. Atty., New Orleans, La., for U.S. in No. 88-3215.
 Patti A. Goldman, Public Citizen Litigation Group, Washington, D.C., Francis King, Asst. Federal Public Defender, New Orleans, La., for Okabe.
 Kathleen Kahoe, Robert J. Boitmann, Asst. U.S. Attys., New Orleans, La., for U.S. in No. 88-3233.
 John H. Craft, Asst. Federal Public Defender, New Orleans, La., for Lemoine.
 John Volz, U.S. Atty., New Orleans, La., for U.S. in No. 88-3389.
 Robert R. Harris, El Paso, Tex., for Venegas and Soltero.
 LeRoy Morgan Jahn, Janet E. Bauerle, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for U.S. in Nos. 88-1410, 88-1354.
 Salvador C. Ramirez, El Paso, Tex., for Ramirez.
 LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for U.S. in No. 88-1424.
 Tony Chavez, Michael McLeaish, Odessa, Tex., for Valdez-Trevino.
 Marjorie Meyers, Roland E. Dahlin, Louis J. Menendez, Federal Public Defenders, Houston, Tex., for Hukel.
 Frances H. Stacy, Asst. U.S. Atty., Henry Oncken, U.S. Atty., Houston, Tex., for U.S. in No. 88-2259.
 Appeals from the United States District Court for the Western District of Texas.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, BROWN and JOLLY, Circuit Judges.
 PER CURIAM:
 
 
 1
 These cases, which have been consolidated for argument and appeal, involve the application of the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984. Following oral argument, this panel, exercising the court's supervisory power, directed that the guidelines be applied in all district courts of the Fifth Circuit. United States v. White, 855 F.2d 201 (5th Cir.1988). We retained our jurisdiction over these cases but rendered no decision on the merits pending the decision of the United States Supreme Court in Mistretta v. United States, which was to address the substantial constitutional issues presented here. The Supreme Court has now rendered its decision in Mistretta, --- U.S. ----, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), and we in turn reach the remaining issues raised by the appellants.
 
 
 2
 Those remaining issues address both constitutional attacks not raised in Mistretta and the legality of the sentencing guidelines. It is argued that the guidelines are unconstitutional because they too narrowly limit the sentencing court's discretion, thereby limiting the defendant's right to present mitigating factors in violation of the Due Process Clause of the United States Constitution and because they deprive defendants of their right to a jury trial by encouraging guilty pleas in contravention of the sixth amendment. In one of these consolidated cases, United States v. White, 855 F.2d 201 (5th Cir.1988), the appellant argues that application of the guidelines to a conspiracy that began prior to the enactment of the guidelines violates the Ex Post Facto Clause. The appellants also argue that the sentencing guidelines contravene the clear congressional mandate of the Sentencing Reform Act of 1984. Finally, the appellants argue that the guidelines never became effective because the required General Accounting Office (GAO) report was inadequate and untimely. The arguments described above are without merit. The other issues raised are controlled by the holdings of Mistretta v. United States. We affirm the sentences imposed on all defendants.
 
 
 3
 Each of the defendant/appellants in these consolidated appeals was sentenced according to the sentencing guidelines promulgated by the United States Sentencing Commission. With one exception discussed below, their crimes are irrelevant. They attack the validity of the guidelines, not the application of the guidelines in particular cases. For a discussion of the methodology for applying the guidelines see United States v. Mejia-Orosco.
 
 I.
 
 4
 The guidelines were designed to create some limits to the discretion of district judges in sentencing, so as to produce greater uniformity among the sentences imposed upon similar offenders convicted of like crimes. See Mejia-Orosco, 867 F.2d 216 (5th Cir.1989). Appellants argue that this restricted discretion violates the Due Process Clause because it unduly limits the right of an accused to present mitigating factors prior to sentencing. There is, however, no such right guaranteed by the Constitution. The Constitution does not require individualized sentences. Lockett v. Ohio, 438 U.S. 586, 602, 98 S.Ct. 2954, 2963, 57 L.Ed.2d 973 (1978). Congress has the power to completely divest the courts of their sentencing discretion and to establish an exact, mandatory sentence for all offenses. Id. at 603-04, 98 S.Ct. at 2964-65. If Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the guidelines.
 
 II.
 
 5
 The guidelines provide for a reduction in sentence if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility" for his criminal conduct. Guideline 3E1.1. A defendant who puts the government to its proof by challenging factual guilt may find it difficult, after conviction, to persuade the district court that he is entitled to this reduction. The official commentary to guideline 3E1.1 states,
 
 
 6
 A defendant may manifest sincere contrition and take steps toward reparation and rehabilitation even if he exercises his constitutional right to a trial. This may occur when a defendant decides to go to trial to assert and preserve issues that do not relate to factual guilt, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct, or to raise evidentiary issues that may result in an acquittal.
 
 
 7
 Id., commentary. It is argued that this provision places an unconstitutional premium on the exercise of an accused's right to a trial by jury under the sixth amendment.
 
 
 8
 Even assuming that the sole purpose of this guideline is to encourage guilty pleas, it is not unconstitutional for the government to bargain for a guilty plea in exchange for a reduced sentence. Brady v. United States, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); Roberts v. United States, 472 F.2d 1195, 1196 (5th Cir.1973). The guideline, in fact, does not guarantee that a defendant who pleads guilty will receive a lower sentence. The defendant must establish his sincere contrition. The commentary to the guideline states, "A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section." Guidelines 3E1.1, commentary. The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized. Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir.1981); United States v. Thompson, 476 F.2d 1196, 1201 (7th Cir.), cert. denied, 414 U.S. 918, 94 S.Ct. 214, 38 L.Ed.2d 154 (1973).
 
 III.
 
 9
 Suzie White argues in her appeal, No. 88-1073, that application of the sentencing guidelines to her crime violates the Ex Post Facto Clause. White was convicted of conspiracy to possess heroin with the intent to distribute it, in violation of 21 U.S.C. Secs. 841(a)(1) & 846. The conspiracy for which she was charged and convicted began before the effective date of the sentencing guidelines, November 1, 1987. United States v. Byrd, 837 F.2d 179, 181 (5th Cir.1988). Thus, she argues, any application of the guidelines to her crime would be ex post facto. Conspiracy is a continuing offense. Assuming that the guidelines proscribe a sentence for her drug conspiracy offense greater than the previous norm, the Ex Post Facto Clause, which bars an increase in the punishment for an offense after it has been committed, is not violated by applying an increased penalty to White's conspiracy that continued after the effective date of the increased penalty. United States v. Baresh, 790 F.2d 392, 404 (5th Cir.1986). The sentencing guidelines apply "only to offenses committed after" the effective date of the Act. Sentencing Reform Act of 1984, Pub.L. 98-473, 98 Stat. 2031, 2033, Sec. 235(a)(1). White's conspiracy offense continued well after November 1, 1987, and thus was an offense committed after the effective date.
 
 IV.
 
 10
 The Supreme Court noted in Mistretta that Congress gave the Commission "significant discretion" to develop the guidelines, but concluded that Congress had provided sufficient intelligible principles to guide the Commission's actions. The Court made this determination in response to the petitioner's argument that Congress had violated the nondelegation doctrine. The identical argument was made in these consolidated cases, which, of course, Mistretta controls. The appellants in these cases, however, also argue that the guidelines are illegal because the Commission violated the statutory mandate of the Sentencing Reform Act of 1984 by creating guidelines which: (1) improperly restrict probation; (2) compute a defendant's criminal history in a manner that perpetuates sentencing disparity; (3) improperly increase the prison population; and (4) allow the government to control the reward granted for cooperation with the government.
 
 
 11
 At the outset, we note that the "construction given to a statute by those charged with its administration is entitled to great deference." Turner v. Weinberger, 728 F.2d 751, 758 (5th Cir.1984). Congress did not prescribe the form or substance of the guidelines; it granted broad authority guided by specific goals and principles. A review of the Commission's policy statements reveals the high degree of study and deliberation with which the Commission undertook their task of following the congressional directive. See generally, Sentencing Guidelines and Policy Statements, April 13, 1987; Supplementary Report on the Initial Sentencing Guidelines and Policy Statements, June 18, 1987. In light of such well-reasoned statutory interpretation and implementation, we find that the Commission acted well within its broad grant of authority and pursuant to congressional goals and principles.
 
 A. The availability of probation
 
 12
 A sentencing judge who follows the guidelines will grant probation in only rare circumstances. The guidelines permit "straight" probation, probation which does not follow a prison or jail term, only when the minimum jail term authorized by the guidelines is zero months. Probation is also authorized when the minimum term of the applicable sentence range is one to six months. In such situations the minimum jail term must be served prior to probation. Even assuming district courts will at times validly depart from the guidelines, it is unlikely that probation will often be used. This is true despite the fact that the federal statute authorizing probation, which was part of the same act that established the Sentencing Commission, prohibits probation only for defendants who have been convicted of Class A or B felonies, or are otherwise imprisoned, or unless the governing statute precludes probation. 18 U.S.C. Sec. 3561.
 
 
 13
 The appellants argue that the Sentencing Commission went well beyond its statutory mandate in eliminating probation and thus offended due process. The statutory and constitutional arguments collide: if the Commission had authority to decrease the availability of probation as a sentencing option, there is no contravention of due process. The statute mandates that the Commission "shall insure that the guidelines reflect the appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense...." 28 U.S.C. Sec. 994(j). This provision grants wide discretion to the Commission to determine the appropriateness of probation. The legislative history of this provision substantiates the breadth of this grant:
 
 
 14
 "[Section 3561, discussed above] creates no presumption for or against probation. The Committee believes that the sentencing guidelines can more adequately delineate those cases in which a term of probation is preferable to a term of imprisonment, or vice versa, as a means of achieving the purposes of sentencing...."
 
 
 15
 S.Rep. No. 225, 98th Cong., 2nd Sess. 90, reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3273. The Commission acted well within the broad authority granted it by a Congress which was cognizant of the statute authorizing probation in all but certain felony cases. There is no conflict in the statutory scheme and no due process violation.
 
 
 16
 B. Calculation of the defendant's criminal history
 
 
 17
 Under the guidelines, a defendant's sentence is based upon two factors--the offense committed and the defendant's criminal history. The defendant's criminal history is to be calculated on a point scale. Points are assigned to prior convictions depending upon the length of the sentence and whether the instant offense was committed within two years of release from prison or while under any criminal sentence.
 
 
 18
 The appellants argue that calculating a defendant's sentence based upon the length of previous sentences perpetuates the sentencing disparity that Congress expressly sought to eliminate. In choosing this approach, the Commission sought to implement Congress's directive that sentences should be based upon both "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. Sec. 3553. The Commission recognized the imperfections involved in using prior sentences to decide a defendant's criminal history, but adopted this approach for lack of any apparent, superior alternatives. To minimize any risk of injustice, the guidelines allow the defendant to introduce information concerning the seriousness of an underlying conviction so that an accurate criminal history category can be set by the district court. See Guideline 4A, commentary. This method violates no explicit statutory directive. It adequately accomplishes Congress's purposes.
 
 C. The prison population
 
 19
 In formulating the guidelines the Commission was directed by Congress to consider the nature and capacity of federal correctional facilities and to formulate the guidelines so as to "minimize the likelihood that the federal prison population will exceed the capacity of the federal prisons...." 28 U.S.C. Sec. 994(g). The appellants argue that the guidelines will significantly increase the prison population in violation of this directive. The directive, however, was not a prohibition upon any increase in the federal prison population but, by its clear wording, a directive only that the Commission consider the effects of such an increase. The Commission is also directed by the same provision to recommend "any change or expansion in the nature or capacity of such facilities and services that might become necessary as a result of the guidelines...." Id. (emphasis supplied). Congress clearly envisioned that properly confected guidelines might increase the prison population.
 
 
 20
 [T]he purpose of the requirement [that the Commission take the capacity of the prison system into account] is to assure that the available capacity of the facilities and services is kept in mind when the guidelines are promulgated. It is not intended, however, to limit the Sentencing Commission in recommending guidelines that it believes will best serve the purposes of sentencing. Instead, it is intended that the Commission be aware of the system's capacity in order to assure that it is not inadvertently exceeded, and that the Commission make recommendations as to any changes in that capacity that it believes to be necessary in light of its sentencing guidelines.
 
 
 21
 S.Rep. No. 225, 98th Cong., 2nd Sess. 175, reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3358. The Commission extensively studied the effect of the proposed guidelines upon the prison population and concluded that, compared to the effects that tougher drug laws and the expected increases in the general population would produce, the increase from the guidelines was not prohibitive. See Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 62-75, June 18, 1987.
 
 
 22
 D. A defendant's reduction in sentence for cooperating with the government
 
 
 23
 Congress directed the Commission to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed ... to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. Sec. 994(n). To implement this directive, the Commission drafted a policy statement to assist district judges if they chose to depart from the guidelines in appropriate cases. Guideline 5K1.1, policy statement. This statement places substantial weight upon the government's evaluation of the defendant's assistance and requires that the government file a motion reciting the assistance given. The appellants contend that by providing for a motion by the government, this policy statement fails to implement the congressional directive.
 
 
 24
 The appellants misperceive the purpose and effect of the guidelines and in particular the policy statements contained in the guidelines. The guidelines are not rigid, mechanical requirements. See Mejia-Orosco, 867 F.2d 216 (5th Cir.1989). They are designed to assist the court in imposing an appropriate sentence, and in unusual cases, to make departures appropriate. The requirement of guideline 5K1.1 that the government file a motion is predicated on the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance and that it would be the rarest of cases in which the government would be unwilling to recognize that assistance. This policy statement obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance. The provision accords with the statutory directive.
 
 V.
 
 25
 Under the terms of the enabling act, the guidelines did not go into effect until six months and a day after the guidelines were submitted to the Congress. Sentencing Reform Act of 1984, Pub.L. 98-473, 98 Stat. 2031, 2033, Sec. 235(a)(1)(B)(ii). During this six month period, the Sentencing Commission was required to submit a report stating the reasons for its recommendations, and the GAO was to undertake a study and report to the Congress within 150 days of submission. Id. The appellants argue that the Sentencing Commission's supplemental report was untimely and the GAO's report was untimely and inadequate. Even if true, the appellants would not be entitled relief on such a claim.
 
 
 26
 The enabling act and its legislative history clearly establish that the reports of the Commission and the GAO were solely for Congress's benefit in evaluating the guidelines. See id., S.Rep. No. 225, 98th Cong., 2nd Sess. 189, reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3372. The required submission dates preceded the deadline for congressional action by three months. If Congress had desired more time or better reports, it had the time and power to act. In fact, it did so, extending the effective date by one year. Pub.L. 99-217, Secs. 2, 4, 99 Stat. 1728 (Dec. 26, 1985). No further action is necessary.
 
 
 27
 This court will not scrutinize the merits or timeliness of reports intended solely for the benefit of Congress. We would have no standards with which to judge such a question. Such a determination is for Congress and is essentially a political question outside the province of the judiciary. Baker v. Carr, 369 U.S. 186, 214-15, 217, 82 S.Ct. 691, 708-09, 710, 7 L.Ed.2d 663 (1962); Coleman v. Miller, 307 U.S. 433, 450, 59 S.Ct. 972, 980, 83 L.Ed. 1385 (1939). Neither the merits nor timeliness of the required reports affect the validity of the guidelines.
 
 VI.
 
 28
 Based on the foregoing, the sentences imposed in accordance with the sentencing guidelines are each and all
 
 
 29
 AFFIRMED.