UNITED STATES of America,
Plaintiff–Appellee,

v.

Maria Christina HURTADO and
Augustine Aragones, Jr.,
Defendants–Appellants.

No. 89–2763
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 17, 1990.

Order on Rehearing En Banc May 11, 1990.

Michael D. Abzug, Brian Q. Robbins, Los Angeles, Cal., for Hurtado.

Earl L. Hanson, Los Angeles, Cal., for Agagones.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for U.S.

Before CLARK, Chief Judge,
WILLIAMS and DUHÉ, Circuit Judges.

CLARK, Chief Judge:

## I.

Maria C. Hurtado (Hurtado) was convicted of conspiracy to possess over five kilograms of cocaine with intent to distribute it, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, aiding and abetting the possession of over five kilograms of cocaine with intent to distribute it, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and aiding and abetting the laundering of money obtained from unlawful activity, 18 U.S.C. §§ 1956(a)(1) & (2). She appeals the district court's denial of her motion to suppress the cocaine and an incriminating statement she made to federal agents.

Co-defendant Augustine Aragones, Jr. (Aragones) pleaded guilty to conspiracy to possess over five kilograms of cocaine with

intent to distribute it, 21 U.S.C. §§ 841(a), 841(b)(1)(A), 846, and aiding and abetting the laundering of money obtained from unlawful activity, 18 U.S.C. §§ 1956(a)(1)(A) & (2). The district court denied Aragones' motion for a declaration that the Sentencing Guidelines are unlawful. Aragones appeals. We affirm as to Aragones and affirm in part and vacate and remand in part as to Hurtado.

## II.

*Facts.*

On December 2, 1988, federal agents knocked on the door of a residence in Houston, Texas. Hurtado came to the door. An agent told Hurtado that they suspected she had large amounts of currency and/or drugs inside the house and asked permission to search it. Hurtado denied the presence of any such items and asked why the agents suspected her. The agent told Hurtado that they had searched another residence and found evidence of illegal drug activity and that they had reason to believe she was associated with the people who lived there. One of the individuals at the other residence was co-defendant Aragones. Hurtado replied that she was merely an acquaintance of those people. After an agent informed Hurtado that her passport had been found at the other residence, she allowed the six agents into her home and told them they could search it.

Hurtado and two agents sat at the dining-room table. Hurtado explained that she understood English and could speak it but could not read it very well. Speaking Spanish, one of the agents summarized a consent-to-search form. The form advises suspects that they have the right to refuse to submit to a search. Another agent instructed the interpreting agent to read the form to Hurtado line-by-line, which he did. Hurtado asked the agent to give the form to her daughter, Alexandria Rengifo (Rengifo), who read the form and confirmed what the agent had said. Rengifo later testified that the agent did not translate the form very well but that she did not correct him. Hurtado told the agents that she understood what had been explained to

her and gave them permission to search the house.

An agent asked Hurtado if there were large amounts of currency, guns, or illegal drugs in the house. She denied the presence of any such items. The agent then asked her if there was any cocaine in the house. She stood up, began crying, and pointed to a kitchen closet. An agent reread the consent form to Hurtado, and Hurtado signed it. The agents found 100 kilograms of cocaine in the closet and 3 additional kilograms of cocaine in a bedroom. An agent then read Hurtado the *Miranda* warnings and placed her under arrest.

Hurtado moved to suppress the cocaine on the ground that her consent to search was involuntary. She also moved to suppress her response to the agent's question about the presence of cocaine in her home, arguing that she should first have been given the *Miranda* warnings. Hurtado testified at the suppression hearing that she has the equivalent of a seventh-grade education in the Colombian schools and had not been aware of her *Miranda* rights. She also testified that she allowed the agents in her home and consented to the search only because she felt she had no other choice. Hurtado conceded that the agents did not threaten her with physical violence and that the agents brandished no weapons.

The district court denied Hurtado's motion to suppress. Hurtado was tried before the court on stipulated facts and found guilty. The court sentenced Hurtado to 180 months of incarceration, 5 years of supervised release, and $150 in special assessments.

Co-defendant Aragones pleaded guilty to conspiracy to aid and abet the distribution of cocaine and aiding and abetting the laundering of money obtained from unlawful activity. He moved for a declaration that the Sentencing Guidelines are unconstitutional and otherwise unlawful. The motion was denied. The district court sentenced Aragones to 180 months of incarceration, 5 years of supervised release, and $100 in special assessments.

Hurtado and Aragones appeal, raising various grounds for relief. Because the

district court did not evaluate the voluntariness of Hurtado's consent to search under the evidentiary standard applicable in this circuit, we affirm in part and reverse and remand in part as to Hurtado. We affirm in all respects as to Aragones.

## III.

### A.  Hurtado's Consent to Search.

Hurtado argued at the suppression hearing that she did not freely and voluntarily consent to the search of her residence, despite having signed the consent-to-search form. She testified that she allowed the agents to conduct the search only because she felt she had no other choice. She claimed that the agents' presence in her home, their persistent questioning, the interpreting agent's imperfect translation of the consent-to-search form, and her limited education and knowledge of her constitutional rights combined to render her consent involuntary.

■■■■  The voluntariness of an individual's consent to search is a question of fact that is determined by examining the totality of the circumstances. *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir.1988). Under the controlling decisions of this circuit, the government must prove by clear and convincing evidence that consent to search was freely and voluntarily obtained. *Gonzales*, 842 F.2d at 754; *United States v. Andrews*, 746 F.2d 247, 249 (5th Cir. 1984), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); *United States v. Parker*, 722 F.2d 179, 182 (5th Cir.1983) (citing *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968)). A district-court finding that the defendant voluntarily consented to a search cannot be overturned on appeal unless it is clearly erroneous. *Gonzales*, 842 F.2d at 754.

■■■  In the present case, the district court determined that "[t]he totality of the circumstances shows that Mrs. Hurtado's consent to search was given knowingly, freely, and voluntarily." However, the court incorrectly made its finding based on the preponderance of the evidence standard. We have examined the record and cannot unequivocally conclude that the government proved by clear and convincing evidence that Hurtado's consent to the search was voluntary. The government may well have carried its burden. We are therefore compelled to reverse and remand to the district court so that factfinder can make a determination based on the clear and convincing evidence standard.

The United States Supreme Court has indicated that the voluntariness of an individual's consent to search need only be proven by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 & n. 14, 94 S.Ct. 988, 996, & n. 14, 39 L.Ed.2d 242 (1974); *see also Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987); *but see Bumper v. North Carolina*, 391 U.S. 543, 548–49 & n. 12, 88 S.Ct. 1788, 1792 & n. 12, 20 L.Ed.2d 797 (1968) (footnoting several lower court opinions arguably applying the clear and convincing standard). The Court has also adopted the preponderance standard for determining the voluntariness of a custodial confession, *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), a situation in which the danger of government coercion is as great, if not greater, as in the search-and-seizure context.

At least five of the Circuit Courts of Appeals have followed the Supreme Court's lead and adopted the preponderance standard for determining the voluntariness of an individual's consent to search. *United States v. Bradley*, 869 F.2d 417, 419 (8th Cir.1989); *United States v. Sebetich*, 776 F.2d 412, 424 (3d Cir.1985), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988); *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir.1983), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2030, 85 L.Ed.2d 313 (1985); *United States v. O'Looney*, 544 F.2d 385, 388 (9th Cir.), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976); *see also United States v. Block*, 590 F.2d 535, 539 (4th Cir.1978) (authority to consent to search). Three circuits apply

a "clear and positive" evidence standard, *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir.1985); *United States v. Jones,* 641 F.2d 425, 429 (6th Cir.1981); *Judd v. United States,* 190 F.2d 649, 651 (D.C.Cir.1951), and three other circuits have applied standards more stringent than the preponderance standard based on the particular circumstances of the case, *see United States v. Robinson,* 690 F.2d 869, 875 (11th Cir.1982) (airport stop); *United States v. Sanchez–Jaramillo,* 637 F.2d 1094, 1099 (7th Cir.1980), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980) (consent after illegal detention); *Gorman v. United States,* 380 F.2d 158, 163 (1st Cir.1967) (consent after arrest).

■ In light of the Supreme Court authority noted above and the conflicts among the Circuits in legally similar situations, en banc reconsideration of the government's burden of proof would appear to be warranted. If the preponderance standard were applied to this case, we would readily conclude that the district court's finding of voluntariness was not clearly erroneous. However, we are not at liberty to overturn prior panel precedent. *See Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 425–26 (5th Cir.1987). We therefore are required to vacate and remand to the district court for a determination based on the clear and convincing evidence standard.

### B. Hurtado's Incriminating Statement.

■ Hurtado also contends that the district court should have suppressed her response to the agent's question about the presence of cocaine in her home because she was not first given the *Miranda* warnings. Hurtado claims she was "in custody" for *Miranda* purposes because six agents were interrogating her in a small room of her home. She argues that a reasonable person in her position would not have felt free to leave or to ask the agents to leave.

■ The current test for determining whether an individual is "in custody" and therefore entitled to the *Miranda* warnings

before questioning is found in *United States v. Bengivenga,* 845 F.2d 593 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988):

> A suspect is … "in custody" for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

*Id.* at 596.

In this case, Hurtado invited the agents into her home and did not ask them to leave after learning of her right to refuse them permission to search. She admitted that the agents never brandished any weapons and that they did not threaten, coerce, or physically restrain her in any way. She also admitted that no one told her she was under arrest or that she could not leave. Hurtado's sixteen-year-old daughter was present with her. The fact that the agents were in Hurtado's home asking probing questions does not by itself indicate a degree of restraint normally associated with formal arrest.

■ The only articulated support for Hurtado's claim is that she was nervous and surprised. Hurtado's apprehension was certainly understandable considering the large amounts of cocaine hidden in her home. However, the psychological pressure Hurtado experienced because she feared the agents might discover her illegal drug activities is irrelevant to the "in custody" determination. *See Bengivenga,* 845 F.2d at 596. We conclude that Hurtado was not "in custody" for *Miranda* purposes when she pointed to the closet containing the cocaine.

### C. Hurtado's Sentence.

■ Hurtado's final argument is that the district court should have given her a two-point reduction in her base-offense level under the Guidelines because of her minor role in the offenses. *See* Sentencing Guidelines, § 3B1.2(a). Her claim to have played only a minor role is based on the contention that the only thing she did was

to safeguard the cocaine. We reject this contention.

An individual must be "substantially less culpable" than the average participant in the crime to receive a two-level reduction for being a minor participant. *Id.* § 3B1.2(a), application note 3; *United States v. Velasquez*, 890 F.2d 717, 720 (5th Cir.1989). In this case, Hurtado was in possession and control of a large amount of cocaine in her home. The stipulated testimony also shows that Hurtado's name and handwriting were found in documents connected with cocaine trafficking. The district court's finding that Hurtado was not substantially less culpable than the average participant in the offenses is therefore not clearly erroneous. *See id.*

## IV.

*Aragones' Attacks on the Sentencing Guidelines.*

Co-defendant Aragones advances numerous arguments in support of his contention that the Sentencing Guidelines violate due process, that the Sentencing Commission failed to follow its statutory mandate, and that the General Accounting Office study of the potential impact of the Guidelines was a sham. He contends that the Sentencing Guidelines must therefore be struck down in their entirety. We reject these contentions.

All of Aragones' arguments, save two, were expressly rejected in *United States v. White*, 869 F.2d 822 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). We need not review them here. The two remaining arguments concern the Sentencing Commission's compliance with its statutory mandate. Aragones contends that the Commission violated the mandate by making the imposition of minimum fines and minimum terms of supervised release mandatory under the Guidelines. He maintains that the enabling legislation required the Commission to leave the imposition of fines and supervised release within the sound discretion of the sentencing court. We reject these contentions.

■ Aragones does not have standing to challenge the imposition of fines under the Guidelines. The district court did not fine Aragones because he had no assets. *See* Sentencing Guidelines, § 5E4.2(f). The special assessments imposed on Aragones are not "fines" within the meaning of the Guidelines and were levied pursuant to statute. *See id.* § 5E4.3; 18 U.S.C. § 3013.

■ We reject Aragones' argument that the Commission violated its statutory mandate by requiring the imposition of minimum terms of supervised release for felony convictions. The Commission was given broad authority to implement Congress' specific goals and policies. *White*, 869 F.2d at 827. Congress directed the Commission to consider such factors as the nature and circumstances of the offense, the need to deter and rehabilitate offenders, and the importance of protecting the public, in establishing guidelines for the imposition of supervised release. 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(B), (C) & (D), 3583(c). The Commission's decision to mandate minimum terms of supervised release for felony convictions is entirely consistent with these factors.

■ The Guidelines are also consistent with Congress' goal of reducing, but not eliminating, the discretion of district judges so as to produce greater uniformity in sentencing. *See White*, 869 F.2d at 825. District judges generally must impose supervised release for felony offenders. However, they may forbear imposing supervised release when the circumstances warrant such a departure from the Guidelines. *See* Sentencing Guidelines, § 5D3.1(a) & application note 1. We conclude that "the Commission acted well within its broad grant of authority and pursuant to congressional goals and principles" in requiring mandatory minimum terms of supervised release for felony offenders. *White* 869 F.2d at 827.

## V.

*Conclusion.*

The judgment as to Hurtado is affirmed in part, reversed in part, and remanded to the district court for a determination of whether the government proved by clear and convincing evidence that Hurtado voluntarily consented to the search of her

residence. The sentence imposed on Aragones is affirmed.

AFFIRMED in part and VACATED in part, and remanded with DIRECTIONS.

Before CLARK, Chief Judge, GEE, REAVLEY, POLITZ, KING, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.