UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 94-10432

---

UNITED STATES OF AMERICA
                                    Plaintiff-Appellee,

versus

JERRY DURRELLE UNDERWOOD,
                                    Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas

---

August 2, 1995

Before WISDOM, DUHÉ and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This case presents the question whether U.S.S.G. § 5K1.1, p.s. is an _ultra_ _vires_ act of the United States Sentencing Commission. Pursuant to a plea agreement, Jerry Durrelle Underwood pleaded guilty to possession of counterfeit currency in violation of 18 U.S.C. § 474. That plea agreement provided that the government retained discretion whether to file a motion for downward departure pursuant to § 5K1.1. The government chose not to file such a motion. Underwood now appeals, arguing among other things, that § 5K1.1, which is designated a policy statement, is invalid because Congress mandated the creation of a "guideline" and not a "policy statement." Finding that § 5K1.1 is not invalid, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Underwood pleaded guilty to an information charging him with possession of counterfeit currency in violation of 18 U.S.C. § 474. Prior to entry of the guilty plea, Underwood and the government entered into a plea agreement in which Underwood agreed to be debriefed and/or to testify on behalf of the government regarding his participation in and knowledge of criminal activities. The government agreed to file a U.S.S.G. § 5K1.1 motion for a downward departure if Underwood's cooperation rose to the level of "substantial assistance." The plea agreement provided that the filing of a § 5K1.1 motion and the determination whether Underwood's assistance was "substantial" were within the sole discretion of the government.

Faced with the government's decision not to file a § 5K1.1 motion, Underwood moved for specific performance of the plea agreement or, alternatively, for an order declaring § 5K1.1 invalid because it is a policy statement rather than a guideline or because it was promulgated as a rule of practice and procedure. The district court denied the motion for specific performance of the plea agreement. The district court also rejected Underwood's constitutional challenges to § 5K1.1.

At the sentencing hearing, the district court reiterated its holding that the government had retained its discretion to determine whether Underwood had rendered substantial assistance and that, accordingly, it was not empowered to order specific performance of the plea agreement unless it determined that the

government breached the plea agreement. Although the district court gave Underwood the opportunity to withdraw his guilty plea, he declined. The district court refused again to order specific performance of the plea agreement. The district court sentenced Underwood to a term of imprisonment of 24 months.

II. ULTRA VIRES CLAIM

As he did in the district court, Underwood contends on appeal that the Sentencing Commission exceeded its authority when it promulgated § 5K1.1, a "policy statement," because Congress mandated the creation of a "guideline" in 28 U.S.C. § 994(n). Underwood argues that the Sentencing Commission's action was ultra vires, rendering § 5K1.1 invalid. Cf. United States v. Bellazerius, 24 F.3d 698 (5th Cir.), cert. denied, __ U.S. __, 115 S.Ct. 375 (1994) (this Court held that Sentencing Commission exceeded its authority when it included an offense as a trigger for a career offender enhancement that the authorizing statute did not provide). Section 994(n) provides as follows:

> The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

(emphasis added).

"Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and

-3-

was unreasonable."  United States v. Matovsky, 935 F.2d 719, 721 (5th Cir. 1991) (citing 18 U.S.C. § 3742(e)).  Underwood claims that he was sentenced in violation of the law.  Cf. United States v. Gardner, 18 F.3d 1200, 1201 n.2 (5th Cir.) (sentence is in violation of the law if it is pursuant to a guideline without statutory authorization), cert. denied, __ U.S. __, 115 S.Ct. 212 (1994).  We review the district court's application of the sentencing guidelines de novo, while reviewing findings of fact under a clearly erroneous standard.  United States v. Brown, 7 F.3d 1155, 1159 (5th Cir. 1993).

## A.  Statutory Construction

Underwood relies on the reasoning set forth in the concurring opinion in United States v. Dawson, 990 F.2d 1314, 1317-19 (D.C. Cir. 1993) (Edwards, J. concurring), which involved this precise issue.  Although there have been numerous challenges to § 5K1.1, a policy statement that deals with the general appropriateness, circumstances, and conditions for departure from a guideline sentence based on substantial assistance to authorities,[1] research has revealed no other case addressing the precise issue raised herein.[2]  Similarly, a plethora of commentators have written much

---

[1]  Section 5K1.1 provides, in pertinent part, the following: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

[2]  While we have not addressed the issue in the present context, we have previously recognized that § 5K1.1 in fact implements the directive contained in § 994(n).  See e.g. United States v. White, 869 F.2d 822, 828 (5th Cir. 1989), cert. denied, 490 U.S. 1112 (1989); see also, United States v. Wills, 35 F.3d

-4-

concerning the validity and application of § 5K1.1,[3] but only two passing references to this precise issue were uncovered. Daniel J. Freed, Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers, 101 Yale L.J. 1681, 1730 (1992); Hon. Bruce M. Selya & John C. Massaro, The Illustrative Role of Substantial Assistance Departures in Combatting Ultra-Uniformity, 35 Boston College L. Rev. 799, 845 n.54 (1994).[4]

In any event, in Dawson, because the issue was raised for the first time on appeal, the majority opinion did not discuss the merits of the claim but simply concluded that there was no plain

_____

1192, 1195 & n.2 (7th Cir. 1994).

[3] See e.g., David Fisher, Fifth Amendment -- Prosecutorial Discretion Not Absolute: Constitutional Limits on Decision not to File Substantial Assistance Motions, 83 J. Crim. L. & Criminology 744 (1993); William T. Harrington, Survey of First Circuit Law 1991-1992, Topical Survey Criminal Procedure, 26 Suffolk U. L. Rev. 891 (1992); Kimberly S. Kelley, Comment, Substantial Assistance Under the Guidelines: How Smitherman Transfers Sentencing Discretion from Judges to Prosecutors, 76 Iowa L. Rev. 187 (1990); Cynthia Kwei Yung Lee, Prosecutorial Discretion, Substantial Assistance, and the Federal Sentencing Guidelines, 42 UCLA L. Rev. 105 (1994); Cynthia K. Y. Lee, The Sentencing Court's Discretion to Depart Downward in Recognition of a Defendant's Substantial Assistance: A Proposal to Eliminate the Government Motion Requirement, 23 Ind. L. Rev. 681 (1990); Jonathon D. Lupkin, 5K1.1 and Substantial Assistance Departure: The Illusory Carrot of the Federal Sentencing Guidelines, 91 Colum. L. Rev. 1519 (1991); Philip T. Masterson, Eliminating the Government Motion Requirement of Section 5K1.1 of the Federal Sentencing Guidelines -- A Substantial Response to Substantial Assistance: United States v. Gutierrez, 24 Creighton L. Rev. 929 (1991); William J. Powell & Michael T. Cimino, Prosecutorial Discretion Under the Federal Sentencing Guidelines: Is the Fox Guarding the Hen House?, 97 W. Va. L. Rev. 373 (1995).

[4] Interestingly, an amendment to §5K1.1 was proposed that would delete the government motion requirement. U.S. Sentencing Commission, Sentencing Guidelines and Policy Statements for Federal Courts: Notice, 57 Fed. Reg. 90, 112 (proposed Jan. 2, 1992). The Sentencing Commission has not adopted it.

error.  Dawson's defaulted argument was based on the distinction that § 994(a) made between "guidelines" and "general policy statements."  990 F.2d at 1317.[5]  Dawson argued "that a straightforward reading of the statute reveals that guidelines and policy statements are quite distinct, for a policy statement presupposes--indeed, cannot exist apart from--a guideline that addresses the same subject."  990 F.2d at 1318.  Thus, he argued that the congressional mandate of § 994(n) was violated when the commission promulgated a policy in lieu of a guideline, and because it promulgated a policy statement in the absence of a guideline addressing departures based on the defendant's substantial assistance.

The government countered that the term "guidelines" in § 994(n) broadly referred to both guidelines and policy statements, and thus, the commission had the discretion to determine which to promulgate notwithstanding the express reference to "guidelines."  990 F.2d at 1318.  In his concurrence, Judge Edwards found this argument untenable and stated that the statute belied such an assumption:

> Section 994(a) draws an unequivocal distinction between "guidelines," 28 U.S.C. § 994(a)(1), and "general policy

---

[5]  We note that Underwood correctly asserts that amendments to the guidelines must be submitted to Congress for approval, but not amendments to policy statements. Headrick, 963 F.2d at 780 (citing 28 U.S.C. § 994(p)).  Section 5K1.1, however, was submitted to Congress along with the rest of the initial policy statements and guidelines.  52 Fed. Reg. 44674 (1987) ("The initial sentencing guidelines and policy statements were submitted to Congress on April 13, 1987."); See also United States v. Kelley, 956 F.2d 748, 753 (8th Cir. 1992) (Congress[had] the same chance to disapprove the policy statement as it had to disapprove guidelines.").

statements <u>regarding application of the guidelines</u>." 28 U.S.C. § 994(a)(2) [emphasis in opinion]. Other sections of the statute make explicit reference to guidelines, general policy statements, or both. <u>See</u>, <u>e.g.</u>, 28 U.S.C. § 994(a)(3) (referring specifically to "guidelines or general policy statement"); § 994(b)(1) (referring specifically to "the guidelines promulgated pursuant to subsection (a)(1)"); § 994(c) (referring specifically to "guidelines and policy statements"); § 994(v) (referring specifically to "general policy statements promulgated pursuant to subsection (a)(2)").

<u>Id</u>.

Judge Edwards then concluded that Congress made deliberate use of the words "guidelines" and "policy statements" in the statute. <u>Id</u>. Because "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning,"[6] Dawson's argument appears, at first blush, persuasive. However, we are of the opinion that the concurrence in <u>Dawson</u> inappropriately focuses on the word "guidelines" while ignoring the context. As explained below, a closer examination of the statute reveals that Dawson's argument is based on a flawed premise, namely that 28 U.S.C. § 994(n) mandated the issuance of a guideline.

In simple terms, Congress' instructions to the Sentencing Commission fall into four general categories. Congress can instruct the Commission to issue guidelines;[7] Congress can instruct the Commission to issue policy statements;[8] Congress can

---

[6]   <u>Sorenson v. Secretary of Treasury</u>, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606 (1986) (internal quotation marks and citation omitted).

[7]     <u>See e.g.</u> 28 U.S.C. § 994(h).

[8]     <u>See e.g.</u> 28 U.S.C. §§ 994(a)(2)(A) through 994(a)(2)(F).

instruct the Commission to issue either a guideline or a policy statement;[9] and, finally, Congress can instruct the Commission to implement a certain Congressionally determined policy in the guidelines as a whole.[10]

The specific language of each subsection of 994 determines into which of the four categories of instructions it falls.[11] After comparing the language of the different subsections of 994, it is apparent that when Congress intended that the Commission enact a "guideline," Congress used the following phrases: "shall promulgate . . . guidelines" (994(a)(1)); "shall assure that the

_____

[9]    See e.g. 28 U.S.C. § 994(a)(3).

[10]    See e.g. 28 U.S.C. § 994(e).  The Sentencing Commission's authority to issue a policy statement in this circumstance arises from the general powers vested in it pursuant to 28 U.S.C. § 994(a)(2).  Section 994(a), in relevant part, provides,

> The Commission...shall promulgate and distribute to all courts of the United States and to the United States Probation System--

> M    M    M    M

> (2) general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code....

[11]    Compare 28 U.S.C. § 994 (h) ("The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum...."), that resulted in the guideline found in § 4B1.1, with, 28 U.S.C. § 994 (e) ("The Commission shall assure that the guidelines and policy statements...reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant"), that resulted in the policy statements found in §§ 5H1.1 to 5H1.12.

-8-

guidelines specify" (994(h) and (i)).  (emphasis added in both).
In contrast, when a subsection of 994 provided that the Commission
shall assure that the guidelines or the guidelines and policy
statements "reflect" the general appropriateness or
inappropriateness of a certain proposition or point of view, it is
apparent that Congress was not mandating the promulgation of a
specific guideline.  We conclude that the final category of
instructions (as described above) may be implemented by drafting
individual guidelines with Congressional policy in mind, or, as in
the case of § 994(n) by drafting a policy statement generally
applicable to the guidelines as a whole.  Rather than mandating the
promulgation of a specific guideline for downward departure based
on substantial assistance, Congress, in § 994(n), was instructing
that the guidelines as a whole should "reflect" the appropriateness
of such a departure.  Thus, § 5K1.1 is a proper response to
Congress' mandate.

Moreover, even if § 994(n) is interpreted to mandate that a
guideline reflect the general appropriateness of downwardly
departing for substantial assistance, we find that the Sentencing
Commission promulgated such a guideline.  In U.S.S.G. § 1B1.1, a
guideline, the Sentencing Commission set forth the basic step-by-
step application principles or instructions regarding how to apply
the sentencing guidelines and determine a defendant's sentence.
Section 1B1.1(i), the final step of the instructions, concerns,
among other things, departures from the guideline range.  In §
1B1.1(i), the Sentencing Commission specifically referred to part

-9-

K of Chapter Five regarding departures, which includes the provision at issue in the case at bar, § 5K1.1.  By promulgating the Congressionally approved guideline § 1B1.1(i), which references part K of Chapter 5 in relation to departures, the Sentencing Commission clearly fulfilled Congress' directive to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."  28 U.S.C. § 994(n) (emphasis added).  We therefore conclude that § 5K1.1, either by itself or in conjunction with § 1B1.1(i), satisfies Congress' directive in § 994(n).

## B. § 5K1.1 and 18 U.S.C. § 3553(e)

Section 5K1.1 can also be viewed as a policy statement addressing "any other aspect of sentencing or sentence implementation."  28 U.S.C. 994(a)(2).  We have previously analyzed the relationship among § 5K1.1, 28 U.S.C. § 994(n), and 18 U.S.C. § 3553(e).  United States v. Beckett, 996 F.2d 70 (5th Cir. 1993).  Title 18 U.S.C. § 3553(e) provides that:

> Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

Additionally, the commentary to § 5K1.1 provides that:

> Under circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in

-10-

the investigation or prosecution of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence.

U.S.S.G. § 5K1.1, comment. n.1.

The dispositive issue in Beckett was whether § 3553(e) and § 5K1.1 "provide for separate and distinct methods of departure, or whether they are intended to perform the same function." Beckett, 996 F.2d at 72. We concluded that, "[b]ased on a combined reading of [§ 5K1.1, § 3553(e), and § 994(n)], . . . there is a direct statutory relationship between § 5K1.1 and § 3553(e) of such a character as to make § 5K1.1 the appropriate vehicle by which § 3553(e) may be implemented." Thus, we held that the district court had the authority to depart below a statutory minimum sentence when the government filed a motion for downward departure pursuant to § 5K1.1, but specifically did not invoke 18 U.S.C. § 3553(e).[12]

---

[12] We found the analysis of the Second and Ninth Circuits more persuasive than that of the Eighth Circuit, which found that the district court did not have the authority to depart below the statutory minimum sentence when the government filed a § 5K1.1 motion but did not invoke 18 U.S.C. § 3553(e). Beckett, 996 F.2d at 72-74 (citing United States v. Cheng Ah-Kai, 951 F.2d 490 (2d Cir. 1991); United States v. Keene, 933 F.2d 711 (9th Cir. 1991); United States v. Rodriguez-Morales, 958 F.2d 1441 (8th Cir.), cert. denied, __ U.S. __, 113 S.Ct. 375, (1992)). We quoted the Ninth Circuit's conclusion that:

In light of the substantial cross references between 5K1.1, 3553(e) and 994(n), we conclude that 994(n) and 5K1.1 do not create a separate ground for a motion for reduction below the guidelines exclusive of 3553(e)'s provision for reduction below the statutory minimum. Rather, 5K1.1 implements the directive of 994(n) and 3553(e), all three provisions must be read together in order to determine the appropriateness of a sentence reduction and the extent of any departure.

Beckett, 996 F.2d at 74 (quoting Keene, 933 F.2d at 714). Subsequent to Beckett, the Seventh Circuit agreed with this Court's

After Beckett, it is clear that, even if we were to assume ad arquendo that § 5K1.1, standing on its own or in conjunction with § 1B1.1(i), does not fulfill the statutory mandate of 28 U.S.C. § 994(n), it nevertheless is not invalid because it implements the statutory mandate of § 3553(e). In other words, because we have held that § 5K1.1 is the appropriate vehicle to implement a statute, by definition, the Sentencing Commission did not exceed the authority given to it by Congress when it enacted § 5K1.1.[13] In short, § 5K1.1 is not an ultra vires act. See Black's Law Dictionary 1522 (6th ed. 1990) (Ultra vires is defined as "[a]n act performed without any authority to act on subject.").

We recognize that the two provisions (§ 5K1.1 and § 3553(e)) are not identical in that the former specifies departures below the guideline range and the latter specifies departures below the minimum statutory sentence. This appears to be a difference without distinction in that a downward departure from the guideline range necessarily is subsumed within a departure below the statutory minimum sentence, and this Court has held that § 5K1.1 is sufficient to implement a departure from the statutory minimum sentence. Moreover, Beckett teaches that once the government files a motion for downward departure based on substantial assistance,

---

position, but the Third Circuit (over a dissent) came to the opposite conclusion. United States v. Wills, 35 F.3d 1192 (7th Cir. 1994); United States v. Melendez, 55 F.3d 130 (3d Cir. 1995).

[13] 28 U.S.C. § 994(n) and 18 U.S.C. § 3553(e) were enacted prior to the effective date (1987) of the initial guidelines, which included § 5K1.1. See Anti-Drug Abuse Act of 1986, Pub. L. No. 99-70, §§ 1007 and 1008, 100 Stat. 3207-7 (1986).

the extent of the departure comes within the district court's discretion.  See also United States v. Hernandez, 17 F.3d 78, 83 (5th Cir. 1994) ("Section 5K1.1 governs all departures from guideline sentencing for substantial assistance, and its scope includes departures from mandatory minimum sentences permitted by 18 U.S.C. § 3553(e).") (citation and internal quotation marks omitted).  A finding that § 5K1.1 is the appropriate vehicle to implement greater departures from the statutory minimum sentence, but not the lesser departures from the guideline range, would be contrary to the teachings in Beckett.  Such a holding would ignore the pronouncement that the provisions be read together.  Further, it would fly in the face of our conclusion that departures based on substantial assistance may not be compartmentalized.  We conclude that § 5K1.1 is the appropriate mechanism by which the departure contemplated in the two statutes may be implemented.

For the foregoing reasons, we must reject Underwood's claim that § 5K1.1 is an ultra vires act by the Sentencing Commission.[14]

SPECIFIC PERFORMANCE CLAIM

Underwood contends that he is entitled to specific performance of the plea agreement and that the district court should have

---

[14] Underwood also argues that the government motion provision of § 5K1.1 is invalid because the Sentencing Commission lacked authority to promulgate a rule of practice and procedure.  We find this argument to be without merit.  Additionally, although Underwood does not ask for relief based on the separate argument that because § 5K1.1 is a policy statement it is not binding, we note that the Seventh and Eighth Circuits have specifically rejected that argument.  United States v. Wills, 35 F.3d 1192, 1195 n.2 (7th Cir. 1994); United States v. Kelley, 956 F.2d 748, 757 (8th Cir. 1992).

-13-

determined whether he provided substantial assistance to the government. Section "5K1.1 does not require the government to move for a downward departure if the defendant provides substantial assistance, but rather grants the government discretionary power to make such a motion." United States v. Garcia-Bonilla, 11 F.3d 45, 46 (5th Cir. 1993) (citing Wade v. United States, 504 U.S. 181, 112 S.Ct. 1840, 1844 (1992)); see United States v. Jackson, 22 F.3d 583, 585-86 (5th Cir. 1994) (although defendant did cooperate with government agents, government was not required to move for downward departure). Under Wade, the government's refusal to move for downward departure cannot be remedied unless the government relied upon an unconstitutional motive in refusing to file the motion. Garcia, 11 F.3d at 46. Underwood does not contend that the government relied upon an unconstitutional motive, only that he was unfairly misled into pleading guilty.

Under Wade, the government may bargain away its discretion. Garcia, 11 F.3d at 46-47. Underwood argues that the government bargained away its discretion to withhold the § 5K1.1 motion because he had already rendered assistance to the government at the time the plea agreement was filed and by the time Underwood entered his guilty plea. At that time, Underwood argues, the government already knew that it would not move for a downward departure. Therefore, Underwood claims he was party to an illusory agreement which did not benefit him and which could not have reflected his true understanding regarding the substance of the agreement. These facts do not demonstrate that the government bargained away its

-14-

discretion to determine whether Underwood's assistance was substantial.

The plea agreement contains an unambiguous reservation of the government's discretionary authority under § 5K1.1. Although the agreement was <u>filed</u> after Underwood was debriefed, Underwood admits in his brief that the agreement was <u>executed</u> before he was debriefed. There is nothing in the record to indicate that the government bargained away its discretion. Underwood's third issue is without merit.

CONCLUSION

For the above stated reasons, the judgment of the district court is AFFIRMED.