**UNITED STATES, Plaintiff,**

v.

**Readie Van SMITH, Defendant.**

**Crim. A. No. 89–00139–R/C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Jan. 4, 1990.

Frederick T. Heblich, Jr., Charlottesville, Va., for defendant.

Ray Fitzgerald, Asst. U.S. Atty., Roanoke, Va., for plaintiff.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case is currently before the court on the defendant's motion to dismiss the two-count indictment against him. On October 18, 1989, the defendant Readie Van Smith was charged with possession with intent to distribute more than 5 grams of "crack" cocaine, a violation of 21 U.S.C. § 841(a), and use of a firearm during the commission of a drug offense, a violation of 18 U.S.C. § 924(c). He now moves to have the indictment dismissed on two grounds. The first is that his Fifth Amendment Due Process rights have been violated by the United States Attorney's decision selectively to prosecute in federal court persons, such as

the defendant, already charged in state courts for the sole purpose of taking advantage of the harsher penalties available in federal court. The second ground is that the Sentencing Guidelines violate his Due Process rights in that they give the prosecution an improper role in the sentencing decision. Both claims are based in large part on the decision in *United States v. Roberts*, 726 F.Supp. 1359 (D.D.C.1989). A motion *in limine* is also pending before the court; however decision on that motion has been held in abeyance pending production of further evidence and argument.

## I

The defendant was arrested on the afternoon of September 30, 1989, in the City of Charlottesville, Virginia, by uniformed officers of the Charlottesville Police Department responding to a report of "shots fired." Upon arriving at an apartment complex on Michie Drive, the officers were directed to apartment 73 by a woman who appeared at the scene. While officers were investigating the open apartment, the defendant was spotted walking up to the unit. While being questioned by the officers, the defendant reached into. his pocket and when he removed his hands a package, later found to contain crack cocaine, fell to the ground. The defendant was then taken into custody. A gun was found during a subsequent search of the attic area of the apartment. The defendant was charged with unlawful discharge of a firearm, Va. Code § 18.2–280, a Class I misdemeanor, and possession of cocaine with intent to distribute, Va.Code § 18.2–248, a felony. Arrest warrants were served on him later that evening at the Charlottesville/Albemarle Joint Security Complex.

On October 2, 1989, a bond hearing was held before the Charlottesville General District Court; bond was denied and a trial date for the firearm charge and a preliminary hearing date for the drug charge were set. After counsel was appointed, a second hearing was held and the defendant was released on bond and a later hearing date set. On October 18, 1989, the United States Attorney obtained the current federal indictment against Smith. When the November 2nd hearing date in state court arrived, the Commonwealth's Attorney obtained a *nolle prosequi* on the drug charge and Smith was tried and convicted on the gun charge, receiving a thirty day suspended sentence. On the same day, Smith was detained by Order of this court under the federal indictment. Counsel was appointed and, bond having been denied by the United States Magistrate, the defendant has remained in detention. Trial is currently scheduled for the early part of January, 1990.

## II

There are two elements to the present motion. The first, for lack of a better term, the court will call the selective transfer claim; the second concerns more directly the prosecutor's role in sentencing under the Sentencing Guidelines (the "Guidelines").[1]

 As to the first claim, it is clear that the federal government has a right to prosecute a defendant in its own courts for conduct which may also be a crime under state law. *See Abbate v. United States*, 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959). It may also seek a federal indictment for such conduct after a prosecution has already commenced in state court or after a conviction has been obtained there. *See Id.* at 195–196, 79 S.Ct. at 670–71. Thus the transferring of the present defendant's prosecution from the Virginia courts to this court does not, by itself, impinge any Due Process rights.

This is not to say that such action might not be carried out in a manner that implicates the Fifth Amendment. Judge Greene concluded that just such an occurrence was taking place in the District of Columbia. Judge Greene was confronted with a re-

---

1. The sentencing guidelines were promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*

peated pattern of conduct by the U.S. Attorney for the District of Columbia which he felt created Due Process violations, including apparent attempts to use the transfer mechanism to avoid the requirements of the Speedy Trial Act, 18 U.S.C. § 3161(b). It was largely because of this conduct that Judge Greene felt compelled to dismiss the indictments against some of the defendants in *Roberts*.

Suffice it to say that this court has seen no similar conduct whatsoever on the part of the U.S. Attorney for the Western District of Virginia, or those serving under him. The single case presently before the court certainly does not resemble the cases in *Roberts* except for the fact of transfer. As noted *supra*, such a transfer, by itself, is perfectly acceptable. Also, because of the intermingling of jurisdictions in the court systems of the District of Columbia, Judge Greene was faced with what may be a unique situation of limited applicability elsewhere.

In light of the foregoing, so much of the defendant's motion will be denied as alleges a violation of his Due Process rights arising from the transfer of this prosecution from state to federal court. Finding no impropriety in the securing of the present indictment the court will also deny that part of the motion which seeks a dismissal of the indictment. The court must now address the second issue raised by the motion.

At the outset it is important to examine what is not at issue in this case. The present motion does not address the propriety of the Guidelines under the nondelegation doctrine or the separation of powers principle of the Constitution; those claims were addressed and found lacking by the Supreme Court in *Mistretta v. United*

*States,* — U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Nor does the defendant argue that he has a Fifth Amendment Due Process right to individualized sentencing; that argument, as well, has been held invalid by all of the Courts of Appeals which have ruled on the question. *United States v. Bolding,* 876 F.2d 21, 22–23 (4th Cir.1989); *United States v. Allen,* 873 F.2d 963, 965–966 (6th Cir.1989); *United States v. Seluk,* 873 F.2d 15, 16–17 (1st Cir.1989); *United States v. Brittman,* 872 F.2d 827, 828 (8th Cir.1989); *United States v. Vizcaino,* 870 F.2d 52, 56 (2nd Cir.1989); *United States v. White,* 869 F.2d 822, 825 (5th Cir.1989); *United States v. Frank,* 864 F.2d 992, 1008–1010 (3rd Cir.1988).[2]

The issue raised in this motion, as the court sees it, and by Judge Greene in *Roberts*, is whether, in light of the way the Guidelines operate, a constitutionally impermissible amount of authority over sentencing is vested in the prosecution. A few further clarifications in the thesis may also be necessary. First, this motion raises a Due Process challenge and not a reincarnation of the separation of powers argument.[3] Secondly, the Due Process argument is not based on the executive branch's appointment and removal power over the Sentencing Commissioners, *see Vizcaino,* 870 F.2d at 57 (holding that such appointment and removal power does not violate Due Process requirements), but instead on the power of the United States Attorneys and their subordinates to control the sentence that a particular defendant actually receives.

The dominant purpose of the passage of the Sentencing Reform Act of 1984 was substantially to reduce, if not eliminate, the disparity that was perceived to exist between sentences issued by different federal judges for substantially similar offenses.

---

**2.** Some of these decisions contradict earlier holdings by the same courts. Of particular note is *United States v. Miller,* 589 F.2d 1117, 1138 (1st Cir.1978) (it is an abuse of discretion "where the trial court refuses to 'individualize' the sentence, *basing it instead upon mechanistic application of rules unrelated to the defendant's character.*" Emphasis added.)

**3.** *Mistretta* dealt only with the question of whether the creation of the Sentencing Commis-

sion, and its placement within the judicial branch, violated the separation of powers doctrine. It did not address the distinct question of whether the authority given by the guidelines to prosecutors, who are members of the executive branch, also violates the separation of powers requirement. That issue is not raised by the present defendant either, and the court in no way intimates any feelings as to its viability.

While this court may question the wisdom of the approach taken by the Act, and the United States Sentencing Commission pursuant to the Act, it does not quarrel with the underlying assumption that Congress can reduce or eliminate the discretion of federal judges in sentencing. *See Lockett v. Ohio*, 438 U.S. 586, 603–604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978); *White*, 869 F.2d at 825. Thus Congress, through the Sentencing Commission, may, as it has, reduce the act of sentencing to what amounts to an exercise in button pushing; the question is whether the Fifth Amendment requires that those buttons be pushed by a federal judge and not by a United States Attorney.

*Sentencing under the Guidelines*

There are two factors which determine the ultimate sentence that a particular defendant will get under the present system. The first is the actual charge which is brought against the defendant, the second is the "higher mathematics" of the Guidelines. *See*, Clarke, *Ruminations on Restrepo*, 2 Fed.Sent.R. 135, 136 (1989). While a judge's discretion is constrained under the labyrinthine Guidelines (by statute, the high end of the range within which the judge must work may not exceed the low end by more than 25% or six months [4]), what discretion remains is freely exercised by the judge without influence by any other party. However, the range within which the judge may work is controlled entirely by the first factor noted above, the charge which the United States decides to bring, as well as what evidence is introduced in the computation of offence level and criminal history category. These latter items are entirely beyond the judge's reach.

Federal judges have never had, and the Fifth Amendment certainly does not require that they have, any control whatsoever over the charging phase of a prosecution; that is the sole domain of the executive branch. Nor, as noted above, does the Constitution require that a federal judge have a certain amount, or any amount at all, of discretion in sentencing. Thus, when the two elements which determine a sentence are separated, no constitutional issue is apparent. However, when the two elements are forced together, as they are by the application of the Guidelines, a constitutional problem becomes visible. "[T]he *de facto* transfer of much of the responsibility for sentencing from impartial judges to prosecutors has had the effect of disturbing the due process balance essential to the fairness of criminal litigation." *Roberts*, 726 F.Supp. at 1363.[5]

This transfer of power occurs to a large extent because of two factors: the wide range of criminal statutes under which a defendant may be charged given a particular set of facts, and the prosecutor's ability under Guideline § 1B1.3 to introduce evidence of "relevant conduct" when determining the guideline sentencing range.

There is no point in this court repeating the detailed explanation given by Judge Greene of the multiplicity of charges that may be brought based on the same factual pattern. *See Roberts*, 726 F.Supp. at 1363–1364. The recent proliferation of conspiracy and RICO actions only exacerbates the problem. The range of sentences possible for the same factual occurrences, as detailed in *Roberts*, can vary from a maximum of one year, to life imprisonment. On the surface the Guidelines create the im-

---

4. This assumes, of course, that the Guidelines are being taken at face value and applied rigidly. There is some doubt as to whether all judges are doing this. It is relatively easy to manipulate the Guidelines by adjusting what factors are taken into consideration in computing offense level and criminal history category, in order to arrive at a range which includes the sentence which the judge desires to impose, and would have imposed absent the guidelines. *See*, Tonry, *Are the U.S. Sentencing Commission's Guidelines "Working Well"?*, 2 Fed.Sent.R. 122, 123 (1989).

5. This problem has been noted by others as well. The Federal Courts Study Committee, in its *Tentative Recommendations for Public Comment* released December 22, 1989, states:

 Instead of achieving the Congressional goal of limiting and regulating sentencing discretion, the Guidelines have actually had the perverse effect of transferring discretion from the court to the prosecutor, who then exercises the discretion outside the system.

 *Id.* at 62.

pression that disparity has been eliminated—if the Guidelines are rigidly applied, all defendants convicted of the same *statutory* violation and who have the same criminal history category will be sentenced within the same narrow range. The true question, though, and the one which reveals the disparity, is whether all defendants against whom the same facts are provable are charged with the same statutory violation. The answer to that question is clearly no. Disparity, and potentially tremendous disparity, continues to exist, but under the guidelines it is exercised by the prosecution "outside the system" and beyond the scope of judicial review.

The discretion of the prosecutor to determine the sentence is further amplified by Guideline § 1B1.3. Section 1B1.3, the so-called "relevant conduct" guideline, provides that "[c]onduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." This guideline applies when the offense level and criminal history category are being computed, as distinguished from § 1B1.4, which allows the judge to consider at the actual sentencing stage such other information as may be available which has not already been taken into consideration by the guidelines. Section 1B1.3 allows a defendant to be sentenced based not only on conduct of which he was not convicted, *see United States v. Blanco*, 888 F.2d 907, 911 (1st Cir.1989); *United States v. White*, 888 F.2d 490, 499–500 (7th Cir.1989), but even on the basis of conduct of which he has been acquitted by a jury, *see United States v. Isom*, 886 F.2d 736, 739 (4th Cir. 1989).

Under the relevant conduct guideline the prosecutor's discretion increases exponentially. Drug cases such as the present one are an excellent example. Under the Guidelines, the offense level in drug cases is determined to a large extent by the weight of the drugs involved, and the drug weight, in turn, is determined almost exclusively by what evidence the prosecutor decides to introduce. The following hypothetical is illustrative.

A defendant is under investigation by undercover narcotics agents. In an effort to impress the agents and gain their cooperation, the defendant on several occasions brags about the amount of drugs he has sold over the preceding weeks. Perhaps he also brags about the number of people he has working under him and the weapons he has used in previous drug transactions. After a period of time the agents are finally able to arrange a buy with the defendant at which they purchase nine grams of crack cocaine. The defendant is arrested and charged with possession with intent to distribute and conspiracy to distribute.

When the time for sentencing arrives, the sentence which will ultimately be received is almost entirely within the hands of the prosecutor. The amount of drugs which will be applied to determine the sentence for defendant depends on how many, if any, of the defendant's boasts the government wishes to introduce. The offense level can be increased by varying amounts by introducing some or all of the defendant's statements about the quantity of drugs handled. The final result can be further fine-tuned by introducing the alleged weapons use and possibly seeking an increase for the defendant's role as an administrator and for the number of people working under him. Since the standard when considering this information is only a preponderance of the evidence, the mere introduction of the statements is often sufficient to gain the increase in the sentence; the chance of the defendant having any meaningful contradictory evidence is slight at best. The differences in the sentences based upon the nature of evidence introduced in this fashion can amount to years.

In light of the fact that the Guidelines were supposedly designed to reduce discretion to a minimal amount, the fact that such a range of possible sentences for the same offense continues to exist is troubling. That such discretion continues to exist may or may not, in the abstract, be a good thing; but that it exists is not a constitutional issue; it is a policy issue to be taken up by Congress. What presents

the constitutional question is who exercises that discretion.

As Judge Greene said,

> [b]ecause of these many variables, and others, the prosecutor has *de facto* control not only of the charges against a defendant but also of the sentence that must and will be imposed. In short, the prosecutor's selection of the charges available to him from his large arsenal amounts at the same time to an almost totally precise selection of the ultimate sentence to be imposed upon conviction or plea of guilty. It follows that, when the judge proceeds, with great and historical solemnity, to pronounce the sentence, he has by and large had no substantive role other than to ratify the choice of sentence already predetermined by the prosecutor's decisions.

*Roberts*, 726 F.Supp. at 1365 (footnotes omitted). Judge Greene continued:

> The question arises, of course, whether, whatever may be the policy implications of this development, the *de facto* transfer of the sentencing authority from the judge to the prosecutor results in a violation of due process. More directly, the issue is whether our constitutional system of due process tolerates a situation where the key sentencing responsibility is exercised not by a judge but by the prosecuting attorney. In the Court's view the answer must be in the negative.

*Id.* 726 F.Supp. at 1366–1367. However, Judge Greene finally concluded that it was not necessary to rest the decision in *Roberts* on "so broad a ruling" because other facts rendered the *Roberts* case even more compelling. *Id.* 726 F.Supp. at 1368. It is here that the present case must part company with *Roberts*. None of the additional factors that Judge Greene relied on are present in this case; the United States Attorney here has not "skewed the process even further so as to introduce a special dimension of arbitrariness." *Id.* The present defendant must rest his case on the "broad ruling" of *Roberts* or not at all. To determine whether that ruling can bear the weight of the present case requires a deter-

mination of just what Due Process requires in a sentencing hearing.

*Due Process in Sentencing*

 The sentencing process, like the criminal trial itself, must comport with the fundamental principles of Due Process. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977). Thus the constitution requires that a defendant be effectively represented by counsel during the sentencing hearing, *id.*, and that he have a right to present evidence in his own behalf. While sentencing by a judge may be a "hallmark of the Anglo–American system of justice," *Roberts*, 726 F.Supp. at 1367, it is less clear that Due Process requires that the judge have any control over that stage.

To be sure, it is the holding of *Roberts* that "[t]he role of judges in sentencing has been a part of the due process core of criminal litigation." *Id.* 726 F.Supp. at 1367.

> Sentencing has historically been the responsibility of judges, the field in which the judge was to bring to bear his accumulated experience, judgment, and, hopefully, wisdom, in order to determine what punishment was appropriate for the offense and offender, convicted after a trial with well defined rules of evidence and procedure or after a plea of guilty. Although exceptions to this scheme were made by the enactment of mandatory minimum sentence laws, judicial decision-making has until now remained the hallmark of the Anglo–American system of justice for the great bulk of criminal offenses.

*Id.* 726 F.Supp. at 1367 (footnotes omitted). While other courts seem to concur that the judicial role in sentencing is traditionally an important one, *see United States v. McCord*, 664 F.2d 60, 63 (5th Cir.1981) ("[s]entencing is the exclusive function of the judge"); *United States v. Escobar Noble*, 653 F.2d 34, 37 (1st Cir.1981), (determining what sentence to impose is "traditionally [a] judicial function"), only *Roberts*

squarely holds that Due Process requires that the judge sentence [6] a defendant.[7]

While in some situations sentencing may be done by a jury, this does not contradict the underlying Due Process rationale: sentencing is to be performed by a person or body *independent* of the partisan aspects of the criminal justice system. For the same reason that a system of justice would not, and indeed cannot, rely on defense counsel to impose sentence, or fix the range within which a judge may work, neither should our system of justice rely on counsel for the prosecution to perform that function.

■ Due Process in sentencing, should, at its most basic, include the right to be sentenced by an impartial authority, unbiased and not predisposed in any direction. For this reason it is improper for even a judge to sentence a defendant out of vindictiveness or spite. *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). Intending no disrespect to the prosecution, it is not humanly possible to require the government's attorneys to prosecute a case vigorously yet then back off and sentence dispassionately, taking into consideration the needs of society and the requirements of the defendant and balancing them equitably. Due Process should not allow the system to require of the prosecution something which it perhaps cannot, and certainly should not, do.

> [U]nder the new sentencing scheme, prosecutors are not only performing their customary responsibilities of filing the charges and presenting the government's side in the course of criminal trials; their power over sentencing ... often effectively constitutes them also as the authority which determines punish-

ment. *This change has in substantial measure eliminated the safety valve in terms of fairness and due process of an impartial judge exercising whatever sentencing discretion any particular criminal statute allows.*

*Roberts*, 726 F.Supp. at 1367. "[T]o substitute prosecutors for judges with respect to the sentencing responsibility is no more compatible with due process than would be prosecutorial assumption of such other functions as the conduct of hearings on bail or motions to suppress." *Roberts*, 726 F.Supp. at 1368.

■ Judge Greene's decision in *Roberts* is both well-reasoned and eloquent, and were this court writing on a clean slate it would not hesitate to follow Judge Greene's lead. However, since the present situation lacks the factual predicate existing in *Roberts*, and since the blackboard of Due Process has already been drawn upon by the Supreme Court, this court must do otherwise.

As noted *supra*, the Supreme Court has stated that Congress could, if it wished, entirely eliminate a federal judge's discretion in sentencing by enacting determinate sentences for all federal crimes. *Lockett*, 438 U.S. at 603–604, 98 S.Ct. at 2964–65. Were Congress to do that, then even the meagre amount of discretion remaining to federal judges under the Guidelines would vanish, and the prosecutor would, very clearly, both charge and sentence, provided there was a conviction or guilty plea. Necessarily, determinate sentencing would transfer the entire responsibility for sentencing to the United States Attorneys; since *Lockett* declares that such a system would pass constitutional muster, the same must be true of the present system. While Judge Greene makes a compelling argu-

---

6. Obviously a judge must actually announce the sentence; what Judge Greene and the current defendant mean when they argue that Due Process requires a judge to "sentence" the defendant is that Due Process requires that a judge perform the philosophical and computational task of arriving at a sentence.

7. The role of judges in sentencing has been a part of the due process core of criminal litigation because, by the very nature of their posi-

tions in the system, judges are expected to be and generally are fair, without partiality to one side or the other. Prosecutors obviously are not, as human beings, different from judges; however, their positions predispose them not to be even-handed while occupying those positions, but to favor the prosecution side of criminal litigation.

*Roberts*, 726 F.Supp. at 1367. (Footnote omitted.)

**1030**

ment, without additional facts, such as those supporting the *Roberts* rationale, this court must adhere to the teachings of the Supreme Court.

Under the facts of this case, the court, finding that the Guidelines's vesting of the bulk of the sentencing authority in the prosecution does not violate the Fifth Amendment's requirement that no person be deprived of life, liberty or property without Due Process of law, as that requirement has been interpreted, will deny the motion seeking a declaration that the Sentencing Guidelines are unconstitutional.

### III

For the reasons stated, the defendant's motions to dismiss the indictment and to have the Sentencing Guidelines declared unconstitutional shall be denied.

An appropriate Order shall this day issue.