**UNITED STATES of America**

v.

**Timmy COBBINS, et al.**

**Crim. No. 89–295.**

United States District Court, E.D. Louisiana.

Oct. 24, 1990.

Wayne Mancuso, Harahan, La., for defendant Henry Lee.

Ronald J. Rakosky, New Orleans, La., for defendant Fitzgerald Johnson.

Herbert V. Larson, Jr., New Orleans, La., for defendant Timmy Cobbins.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of defendant, Timmy Cobbins, to declare the Sentencing Guidelines unconstitutional under the Fifth Amendment as a violation of his right to due process of law. The defendant further requests this Court to employ pre-existing law to his sentencing. Cobbins' co-defendants, Henry Lee and Fitzgerald Johnson, join in the motion. After reviewing the motion, memoranda of counsel, the record and the law, the Court denies the motion for the reasons set forth below.

## INTRODUCTION

On November 17, 1989, after a trial by jury, defendant Timmy Cobbins and two of his three co-defendants were convicted of all three counts of the superseding indictment which were returned against them on August 18, 1989. These counts involved violations of Title 21 United States Code, Section 846 and Section 841(a)(1), possession with intent to distribute cocaine and conspiracy to distribute cocaine. Cobbins and his co-defendants were also convicted of violating Title 18 United States Code, Section 924(c)(1) and Section 2, using and carrying firearms in relation to a drug trafficking crime and aiding and abetting.

## THE CRIMINAL CONDUCT

In June of 1989, a confidential informant working for the Drug Enforcement Agency ("DEA") contacted Henry Lee in an attempt to purchase a quantity of cocaine. The informant represented himself as a person who could regularly buy quantities of cocaine. The DEA considered Lee a middle man who, it was anticipated, would introduce the informant to others willing to sell kilogram quantities of the drug. Lee subsequently contacted Fitzgerald Johnson

John O. Braud, Asst. U.S. Atty., New Orleans, La., for U.S.

in an effort to locate two kilograms of cocaine. Johnson, in turn, contacted Timmy Cobbins. Cobbins, not a known dealer and without resources himself, reached Todd Cooper[1] who allegedly made the final arrangements for the informant to purchase two kilograms of cocaine from Brian Smith. The "buy" was set for June 29, 1989, at the Radisson Hotel in New Orleans.

On that date, the informant and Lee in one vehicle, and Johnson and Cobbins in another, drove to the Radisson. After the four arrived at the hotel, only Cobbins and the informant went in, leaving Johnson and Lee in their respective vehicles. According to DEA records and statements made by the defendants, Cobbins and the informant were admitted to the room by Cooper, who allegedly showed the pair a quantity of cocaine. According to testimony at the trial, Brian Smith, who was armed with a MAC-11 .9mm semi-automatic pistol, watched the transaction while hiding in the bedroom. After the informant saw that there was cocaine in the room he told Cooper he would go get the money and return. Actually, this scheme had been devised by the authorities. Once outside the hotel, it was intended that the informant would give a prearranged signal and the hidden DEA agents would move in and make the arrests.

As Cobbins and the informant were leaving the hotel, Johnson, who was still waiting in a vehicle in front of the hotel told Cobbins he thought he had seen drug agents in the area and that the deal might be a setup. Johnson and Cobbins then left in that vehicle, while the informant entered the vehicle driven by Lee. Johnson and Cobbins were subsequently arrested a few blocks away and a .380 caliber semi-automatic pistol was found under the front seat of the vehicle. Cobbins later admitted to owning this weapon. Lee managed to

evade capture until almost two months later, in August.

Meanwhile, agents moved in on the suspects still in the hotel room. Cooper was arrested without incident immediately after the agents entered the room. Smith, however, tried to escape by jumping from the balcony of his room to an adjacent one. He missed and fell nine floors to his death. The MAC-11 pistol was found near his body. The DEA agents seized the cocaine in the room, which totalled 2007.3 grams.

All parties interviewed indicated that the source of the cocaine was Brian Smith, and the others involved in the crime, Cooper, Cobbins, Lee, and Johnson, were only facilitators of the offense. The jury, as noted previously, acquitted Cooper and convicted the other three defendants of all charges. Most notably, the jury convicted Cobbins, Johnson, and Lee of a conspiracy charge, resulting in all three parties being found guilty of all substantive offenses committed in furtherance of that conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In Lee's case, for example, that meant the jury could, and did, find him guilty of possession of cocaine and using and carrying firearms[2] in relation to a drug trafficking crime, even though Lee did not actually use and possess either the guns or the cocaine. The same is true of Johnson, even though Cobbins admitted the pistol found in their vehicle belonged to him, and even though Johnson was never near the cocaine. Cobbins, likewise, was found guilty of using and carrying the MAC-11 pistol found near Brian Smith's body although he never actually possessed it.

## SENTENCING UNDER THE GUIDELINES

The probation officer responsible for the pre-sentence reports calculated the Sentencing Guidelines range for defendant Cobbins to be from 123 to 138 months.

---

1. Cooper, the fourth defendant at the trial, was inexplicably acquitted by the jury, despite what appeared to the Court to be very convincing evidence that Cooper was actually Brian Smith's assistant in this drug transaction. However, Cooper's acquittal in no way affected the Court's sentencing of the other defendants in this case.

2. The gun count included both the .380 semi-automatic pistol found in the Cobbins/Johnson vehicle and the MAC-11 semi-automatic pistol found near the body of Brian Smith.

This calculation was based on a total offense level of 26 and a criminal history level of I, and includes the mandatory 60 month consecutive sentence for the gun charge. Under the Guidelines, this sentencing range is appropriate notwithstanding the fact that this is Cobbins' first and only felony conviction. Cobbins was sentenced to 130 months incarceration followed by a five year period of supervised release.

Defendant Henry Lee, conversely, had three prior felony convictions for possession of cocaine. It was noted that Lee also met the other requirements of a career offender. Probation calculated his guidelines range to be from 270 to 322 months. This calculation was based on a total offense level of 32 and a criminal history level of VI, and also includes the mandatory 60 month consecutive sentence for the gun charge. Lee was sentenced to 270 months incarceration followed by a five year period of supervised release.

Defendant Fitzgerald Johnson, like Cobbins, had no prior felony convictions. Probation calculated his guidelines range to be from 123 to 138 months. This calculation was based on a total offense level of 26 and a criminal history level of I, and includes the mandatory 60 month consecutive sentence for the gun charge. Johnson was sentenced to 130 months incarceration followed by a five year period of supervised release.

## DISCUSSION

The defendants maintain that the Sentencing Guidelines facially violate their Fifth Amendment right to due process of law. Defendants suggest that the Guidelines violate their right to due process of law as they were generally applied in this case, in the following ways:

A. The Sentencing Guidelines create a mechanical formula which ignores relevant mitigating factors;

B. The Sentencing Guidelines prohibit this court from properly exercising its discretion at a defendant's sentencing;

C. The Sentencing Guidelines provide no standard for weighing or comparing the factors that were mandatorily applicable when the defendants' sentences were determined, which has resulted in arbitrary, and unfair sentences.

Defendant Cobbins' Memorandum in Support, p. 3. Specifically, the defendants raise the following issues with respect to the constitutionality of their sentencing proceedings:

1. Whether the defendants' right to due process was violated because the government, through its charging decision to include the gun count, which carries a mandatory consecutive five year term, determined, at least in part, the defendants' sentences?

2. Whether the defendants' right to due process was violated because the government refused to move the Court for a downward departure from the Sentencing Guidelines as a result of the defendants' cooperation after their convictions?

## THE GENERAL DUE PROCESS CHALLENGES

 The Sentencing Guidelines were designed to limit the discretion of district judges in sentencing, so as to produce greater uniformity among the sentences imposed upon similar offenders convicted of like crimes. *See United States v. Mejia–Orosco,* 867 F.2d 216 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Defendants argue that the Guidelines create a "mechanical formula" which does not take into account relevant mitigating factors. They also state that the Guidelines prohibit a court from exercising its discretion at a defendant's sentencing. Furthermore, the defendants assert that the Guidelines provide no standard for weighing or comparing the various factors which are applicable at sentencing. None of these general challenges rises to the level of a constitutional due process violation.

The notion that Congress can create a framework for the primary purpose of eliminating disparity in sentencing is not improper. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The Guidelines are not, however, intended to be a mechanical formula. Rather, they provide the analytic framework needed to create uniform sentences, because justice

cannot be meted out according to mathematical formulas. *Mejia–Orosco,* 867 F.2d at 219.

> The universe of potential factors that might affect the seriousness of a given offense is too broad to be refined to a mechanistic approach. The sentencing guidelines are not intended to cover all contingencies or rigidly bind district judges. The guidelines do not impose the sentence, they provide a framework for a district court to impose a sentence.

*Id.*

The district court is the fact finder in the sentencing proceeding and the Guidelines statute expressly insulates such fact finding against appellate attack. 18 U.S.C. § 3742(e) (endorsing the "clearly erroneous" standard). Therefore, a sentence will not be reversed if it results from a proper application of the Sentencing Guidelines to those facts. On the other hand, if the court applies the Guidelines to the facts found and departs from the resulting sentencing range, that sentence is also not subject to reversal if the court offers acceptable reasons and the departure is "reasonable." 18 U.S.C. § 3742(e). The Court finds that this approach, as applied in the present case, was not mechanical; rather, it provided an appropriate framework that promoted uniformity in sentencing without eliminating this Court's fact finding role. The defendants were provided with an opportunity to review their respective presentencing reports. Objections and corrections were noted in the record. The defendants were allowed the opportunity to offer evidence of mitigating factors. And, this Court, in its discretion, passed sentence within the calculated guidelines range.

Defendants also argue that the Guidelines prohibit a court from properly exercising its discretion at sentencing. This issue has been resolved by both the Fifth Circuit and the Supreme Court. Congress has the power to completely divest the courts of their sentencing discretion and to establish exact, mandatory sentences for all offenses. *Lockett,* 438 U.S. at 603–04, 98 S.Ct. at 2964–65 (1978); *United States v. White,* 869 F.2d 822, 825 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). "If Congress can remove the sentencing discretion of the district courts, it certainly may guide that discretion through the guidelines." *Id.*

Finally, in their general challenges, the defendants assert that the Guidelines provide no standard for weighing or comparing the various factors which are mandatorily applicable at sentencing. This argument could be viewed in two ways. First, defendants could be asserting that a court's restricted discretion limits a defendant's ability to present evidence of mitigating factors prior to sentencing. Second, and more likely in this case, defendants could be asserting that the Guidelines do not permit the Court to take into account the relevant factual context of an offense prior to the imposition of a mandatory and/or consecutive sentence. As noted above, because the defendants were convicted of a conspiracy charge, each defendant, regardless of whether he actually used or carried a firearm, received the mandatory five year sentence for the gun charge. In addition, defendant Henry Lee received a much longer sentence than the other two defendants because of his three prior felony convictions for possession of cocaine. The three prior felony convictions meant Lee's criminal history category was calculated at Level VI instead of Level I.[3]

Both of these arguments seem to imply that the defendants are entitled to individu-

---

**3.** The Court is not entirely insensitive to the plight of the defendants in this case. There is ample evidence in the record to indicate that these three defendants were only facilitators of the crimes charged. Indeed, Henry Lee, for example, may have been no more than a "lookout." However, Congress, in its discretion, has chosen to punish Lee not only for the offenses charged, but also for the totality of his criminal history—three prior felony convictions for cocaine possession. Lee has an obvious drug problem, but no real history of violent behavior.

His crime was playing a very minor role in a major drug conspiracy. Yet, Lee received the longest sentence, 22 and ½ years. Were it not for the Guidelines, a person in a substantially similar position to Lee would likely have received a sentence from this Court of approximately nine years followed by a period of supervised probation. Since the current cost of incarceration is $1210.05 per inmate per month, the cost differential to the taxpayer between a Guidelines and a non-Guidelines sentence in Lee's case becomes readily apparent. *See* Advis-

alized sentencing. There is, however, no such right guaranteed by the Constitution. *Lockett,* 438 U.S. at 602, 98 S.Ct. at 2963. By enacting the Guidelines, Congress returned to an earlier philosophy in federal sentencing that the punishment should fit the crime and that the main purpose of imprisonment is punishment. *Mejia–Orosco,* 867 F.2d at 218. To assure that the sentences imposed are fair and that sentencing is uniform, Congress restricted the discretion of district judges through the Guidelines and made sentences determinate by eliminating parole. Furthermore, any question of Congress' power to fix sentences or to delegate to the Sentencing Commission the authority to promulgate sentencing guidelines has now been resolved. *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Therefore, the defendants' general constitutional due process challenges to the application of the Sentencing Guidelines to their sentencing proceedings are without merit.

### THE SPECIFIC DUE PROCESS CHALLENGES

#### I. *The Discretionary Selection of Charges Issue*

 The defendants argue that the Sentencing Guidelines violate their due process rights because they gave the prosecutor an improper role in the sentencing decision. They assert that the prosecutor's decision to include the gun count, which carries a mandatory consecutive five year term, determined, at least in part, the defendants' sentences. This claim is based in

large part on the decision in *United States v. Roberts,* 726 F.Supp. 1359 (D.D.C.1989).

There are essentially two elements that determine a sentence: the charges filed against the defendant and the discretion exercised in imposing the sentence. The Fifth Amendment does not require that federal judges have any control whatsoever over the charging phase of a prosecution; that decision is the sole domain of the executive branch. *United States v. Smith,* 727 F.Supp. 1023, 1026 (W.D.Va.1990). Furthermore, the Constitution does not require that a district court judge have any discretion in sentencing. *See Lockett,* 438 U.S. at 603–04, 98 S.Ct. at 2964–65. But, as Judge Michael noted in *Smith:*

> [W]hen the two elements which determine a sentence are separated, no constitutional issue is apparent. However, when the two elements are forced together, as they are by the application of the Guidelines, a constitutional problem becomes visible. '[T]he *de facto* transfer of much of the responsibility for sentencing from impartial judges to prosecutors has had the effect of disturbing the due process balance essential to the fairness of criminal litigation.' *Roberts,* 726 F.Supp. at 1363.

*Smith,* 727 F.Supp. at 1026 (footnote omitted). This transfer of power occurs, at least in part, because of the wide range of criminal statutes under which a defendant may be charged given a particular set of facts, as well as the prosecutor's ability to introduced evidence of "relevant conduct" [4] under Guideline § 1B1.3 when determining the sentencing guideline range. *Id.* [5]

---

ory of May 11, 1989, Administrative Office of the United States Courts. And, of course, the indirect costs of imposing a Guidelines sentence in a case like Lee's, such as the possibility that an inmate's family will require government sponsored financial assistance, increases proportionately as well.

**4.** For a discussion of how the prosecutor's discretion in introducing "relevant conduct" affects the sentencing process, *see Smith,* 727 F.Supp. at 1027. Relevant conduct played little part in the present sentencings. It should be noted, however, that during the course of the investigation of this matter, defendant Lee admitted to playing an active role in the distribution of another approximately 1600 grams of cocaine

on a previous occasion. While this evidence could have been used as relevant conduct in Lee's sentencing, Lee's prior felony convictions and the resulting criminal history enhancement made that unnecessary.

**5.** The Federal Courts Study Committee has noted the problem as well:

> [W]e have been told that the rigidity of the guidelines is causing a massive, though unintended, transfer of discretion and authority from the court to the prosecutor.... Given the extent and depth of [the disagreement over the federal sentencing scheme], we recommend immediate study of proposals to amend the Sentencing Reform Act to bring

This *"de facto* transfer" of power undeniably results in the very disparity that the Guidelines were intended to eliminate. The fundamental problem is not only that disparity continues to exist under the Guidelines, but that under the Guidelines the discretion which leads to disparity is exercised "outside the system" and beyond the scope of judicial review. *Id.* at 1027.[6] This Court need not repeat Judge Greene's detailed example of the numerous charges that a prosecutor could bring based on the same set of facts. It is clear, however, that the possible range of sentences for essentially the same conduct, as set forth in *Roberts*, can vary from one year to a maximum of life imprisonment. *Roberts*, 726 F.Supp. at 1363–65. Judge Michael notes:

> In light of the fact that the Guidelines were supposedly designed to reduce discretion to a minimal amount, the fact that such a range of possible sentences for the same offense continues to exist is troubling. That such discretion continues exist may or may not, in the abstract, be a good thing; but that it exists is not a constitutional issue; it is a policy issue to be taken up by Congress. What presents the constitutional question is who exercises that discretion.

*Smith*, 727 F.Supp. at 1027–28.

To reframe the question: Does a defendant have a due process right to have his sentence *determined* by an impartial authority? We think the answer to that question is clearly no. Under *Lockett* the Supreme Court stated that Congress could, if it wished, entirely eliminate a federal judge's discretion in sentencing by enacting determinate sentences for all federal crimes. *Lockett*, 438 U.S. at 603–04, 98 S.Ct. at 2964–65. Such a system of determinate sentencing would necessarily transfer the *entire* responsibility for determining sentences to the United States Attorneys. Since *Lockett* declares that such a system would pass constitutional muster, the same must be true of the present system. *Smith*, 727 F.Supp. at 1029 (emphasis added).

Reframing the question once again: Does a defendant have a due process right to be *sentenced* by an impartial authority? We think the answer to *that* question is clearly yes. Historically, judges are, by the very nature of their positions in the system, generally fair and impartial. *Roberts*, 726 F.Supp. at 1367. On the other hand, prosecutors are advocates, and are not, therefore, predisposed to even-handedness. *Id.* Judge Michael again states:

> Intending no disrespect to the prosecution, it is not humanly possible to require the government's attorneys to prosecute a case vigorously yet then back off and sentence dispassionately, taking into consideration the needs of society and the requirements of the defendant and balancing them equitably. Due Process should not allow the system to require of the prosecution something which it perhaps cannot, and certainly should not, do.

*Smith*, 727 F.Supp. at 1029. Judge Greene states his concerns even more forcefully in *Roberts:*

> [U]nder the new sentencing scheme, prosecutors are not only performing

---

greater flexibility to the system while adhering to the central tenets of the Act. *Report of the Federal Courts Study Committee*, pp. 138–39, April 2, 1990.

**6.** *See, Roberts*, 726 F.Supp. at 1366. Disparity in sentencing is not the only potential problem. Because discretion is now exercised outside the system, there exists an enormous potential for improper plea agreements. Defendants may be coerced into pleading guilty depending on the selection of the charge, and judges may feel coerced into accepting pleas they would not otherwise accept. The Report of the Federal Courts Study Committee notes:

> [S]ome prosecutors (and some defense counsel) have evaded and manipulated the guide-

lines in order to induce the pleas necessary to keep the system afloat during this period of rapid criminal caseload increase. Some district judges report feeling enormous pressure to accept pleas even though they clearly do not comport with the guidelines. Critics of the guidelines charge that such practices occur regularly, despite the fact that many of them contravene the Attorney General's instructions to federal prosecutors, which state that departures from the guidelines 'should be openly identified rather than hidden between the lines of a plea agreement.'

*Report of the Federal Courts Study Committee*, p. 138, April 2, 1990.

their customary responsibilities of filing the charges and presenting the government's side in the course of criminal trials; their power over sentencing ... often effectively constitutes them also as the authority which *determines* punishment. This change has in substantial measure eliminated the safety valve in terms of fairness and due process of an impartial judge exercising whatever sentencing discretion any particular criminal statute allows.

*Roberts*, 726 F.Supp. at 1367 (emphasis added).

Judge Greene's decision is well reasoned, and many of his concerns are certainly well founded. But this Court cannot follow Judge Greene's broad ruling, as discussed above, because the question of whether the judge should have the discretion to determine punishment, instead of the prosecutor, does not implicate due process. It is, instead, a policy choice which Congress has the power to make. Indeed, Judge Greene did not base his decision in *Roberts* on so broad a ruling because he found that "the United States Attorney ha[d] skewed the process even further so as to introduce a special dimension of arbitrariness." *Id.* at 1368.

In *Roberts*, this arbitrariness resulted from a practice which is available only to the prosecutors in the District of Columbia. *Id.* at 1369 n. 54.[7] It involves "transferring" cases from the D.C. Superior Court to the District Court. If, for example, a defendant whose case has been pending in Superior Court refuses to plead, the prosecutor has the discretion to alleviate the Superior Court caseload by simply dismissing that case and securing a fresh indictment for the same violations in the District Court. Bearing in mind that the defendant may be incarcerated during this entire time, two potential problems become apparent. First, the Speedy Trial clock starts running all over again. Therefore, by means of charging selection, and hence, forum selection, the government is able to avoid adhering to the Speedy Trial Act. Second, the Superior Court does not sentence under the Guidelines; rather, sentences are imposed the old-fashioned way, by judges. Since sentencing under the Guidelines tends to be somewhat more harsh,[8] the prosecutor, by transferring the case to the District Court, has the ability to selectively and determinately punish a defendant merely for not relinquishing his right to a trial by jury. *Id.* at 1368–73 (footnotes omitted). Judge Greene went on to specifically find that these abuses had occurred with respect to particular defendants in *Roberts*. *Id.*

This Court agrees with Judge Greene's narrower approach, which requires a specific finding of arbitrariness or bad faith. This narrower approach necessarily involves a due process analysis. First, sentencing must comport with the fundamental principles of due process. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). For example, the defendant must be effectively represented by counsel during the sentencing hearing. *Id.* He must also be allowed to present evidence in his own behalf. *Smith*, 727 F.Supp. at 1028. However, the defendant has no substantive right to a particular sentence within the range provided for in the applicable criminal statute. *Gardner*, 430 U.S. at 358, 97 S.Ct. at 1204. But, more importantly in the context of the present sentencing scheme under the Guidelines, the sentencing process itself, including any discretion exercised by the prosecutor in selecting the charge or charges, must be free from arbitrariness or bad faith. *See Roberts*, 726 F.Supp. at

---

**7.** We note these specific abuses as illustrative only. Because the relationship between the D.C. Superior Court and the D.C. District Court is unique, these specific types of prosecutorial abuses are not possible here, nor are there allegations of these types of abuses in the present case.

**8.** Judge Greene offers the example of a recent case in his court where an offender charged with possession of 5.5 grams of crack cocaine was subject to a *mandatory minimum* sentence of five years under the Guidelines. Under District of Columbia law applicable in the Superior Court, the same offense carries a *maximum* sentence of five years, no minimum of any kind, with probation available as well. *Roberts*, 726 F.Supp. at 1372 (emphasis in original).

1370 n. 58 (citing *United States v. Goodwin*, 457 U.S. 368, 384, 102 S.Ct. 2485, 2494, 73 L.Ed.2d 74 (1982). In this regard, a court has the constitutional obligation to oversee the sentencing process and make sure it comports with due process. To do this, the court must use its specifically designated role under the Sentencing Guidelines as fact finder and determine by the evidence offered if arbitrariness or bad faith figured into the determination of the defendant's punishment.[9] If the court should make such a finding, it must fashion a remedy that comports with due process, including a "reasonable" departure from the Guidelines. And, as a factual finding this determination is, of course, reversible only if found to be clearly erroneous.

In short, a defendant has a due process right to be *sentenced* by a judge, but no due process right to have that sentence *determined* by a judge. *See United States v. McCord*, 664 F.2d 60, 62 (5th Cir. Dec. 1981).[10] By "sentence" we mean that the proper role of the court under the Guidelines is to supervise the entire sentencing process, making factual findings where required to assure fundamental fairness, and finally, to pass sentence on the defendant. By "determine" we mean that the fact that a prosecutor may implicitly exercise some discretion by choosing between several charges available in a given factual context does not, in and of itself, offend due process. However, if discretion is exercised or charges are chosen arbitrarily or in bad faith, due process *is* implicated and the court must act appropriately.

None of those circumstances exist in the present case. There is no evidence in the record, nor was any offered at the sentencings, that the government attorneys "skewed the process even further so as to introduce a special dimension of arbitrariness." *Roberts*, 726 F.Supp. at 1368. The defendants simply urge that their due process rights were violated because the government attorneys chose to include the gun count in their indictment, thereby determining, in part, defendants' sentences. However, there is simply no evidence that in so doing the government attorneys acted arbitrarily or in bad faith. Therefore, the Court finds that sentencing determination, insofar as that function may have been exercised by the prosecution in this case under the Sentencing Guidelines, did not violate the Fifth Amendment's requirement that no person be deprived of life, liberty or property without Due Process of law.

## II. *The Cooperation Issue*

The defendants also argue in their motion that their right to due process was violated because the government refused to move the Court for a downward departure from the Sentencing Guidelines because of the defendants' cooperation. Section 5K1.1 of the sentencing guidelines provides:

> *Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

Sentencing Guidelines, Chapter 5, Part K—Departure, Section 5K1.1 (1989) [hereinafter § 5K1.1] (emphasis added).

As noted previously, a defendant has a right to due process during the sentencing stage. *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *Shelton v. United States*, 497 F.2d 156, 159 (5th Cir.1974). It is also settled that a defendant is entitled not to be sentenced based on inaccurate information. *United States v. Hodges*, 556 F.2d 366, 369

---

**9.** *See* 18 U.S.C. § 3742(e). This Court is of the opinion that increasing the supervisory and fact finding role of the judge may be the best way to "bring greater flexibility to the system while adhering to the central tenets of the Act." *See Report of the Federal Courts Study Committee, supra* note 4, at 139.

**10.** In *McCord*, there was a dispute regarding whether a particular government agent had been authorized to negotiate a plea bargain and whether government agents assured the defendant he would receive probation. The district court made certain factual findings and concluded that no such plea bargain or assurances were made. This finding was affirmed under the "clearly erroneous" standard on appeal. The Fifth Circuit panel added:

> Neither the FBI agents nor the government attorney has the power to "offer probation" to a defendant. Sentencing is the exclusive function of the judge.

*McCord*, 664 F.2d at 62.

(5th Cir.1977), *cert. denied,* 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978). Additionally, a defendant must be allowed to question the facts presented or relied upon to support the criminal penalty. *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). In other words, both sides "should have an effective opportunity to rebut allegations likely to affect the sentence...." *United States v. Pugliese,* 805 F.2d 1117, 1123 (2nd Cir.1986), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989) (citing, 3 *Standards for Criminal Justice, Sentencing Alternatives and Procedures,* Standard 18–6.4 at 448 (1986 Supp.).

Some courts have ruled that these basic tenets have been violated because § 5K1.1 and its statutory counterpart 18 U.S.C. § 3553(e) provide that only the government may initiate a motion for downward departure based on cooperation. *Roberts,* 726 F.Supp. at 1374; *United States v. Curran,* 724 F.Supp. 1239, 1244 (C.D.Ill.1989). Generally, these courts focus on the judge's loss of discretion to consider cooperation as being constitutionally problematic. The specific concern appears to be that a decision by the prosecutor not to file a 5K1.1 motion is essentially unreviewable. *Curran,* 724 F.Supp. at 1244; *Roberts,* 726 F.Supp. at 1375; *see also, United States v. Justice,* 877 F.2d 664, 667 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989) ("under the new guidelines there appears to be no right of review or remedy if the prosecutor refuses to file a [§ 5K1.1] motion"). Consequently, the *Curran* court held that § 5K1.1 and 18 U.S.C. § 3553(e) were unconstitutional because "once [§ 5K1.1] is made available to one party to the litigation, due process requires that it be made available to all parties to the litigation." *Id.* The *Roberts* court ruled likewise because:

[w]hen a defendant has rendered substantial assistance to law enforcement but the government refuses to file the requisite motion, the sentence the Court is required under law to impose will not be based on true and accurate information: those factors that, because of the cooperation, would call for a reduction in the otherwise mandatory sentence will not be before the Court, and the Court will have to sentence as if the defendant had not rendered such assistance. The defendant is also precluded from questioning the proceedings leading to the imposition of the sentence or the facts relied on by the prosecution. Indeed, under the construction of section 3553(e) of Title 18 and section 5K1.1 of the guidelines espoused by the government, the prosecution could arbitrarily or for an unconstitutional reason (*e.g.,* racial or sex discrimination) decide not to file the motion called for by these provisions, and the court could not intervene even if the defendant were able to demonstrate to it—should he be able to reach the ear of a court—that he had rendered massive assistance to law enforcement....

*Roberts,* 726 F.Supp. at 1374–75.

Two other courts considering the issue have found that while § 5K1.1 and § 3553(e) are not unconstitutional, these provisions do not preclude the district court from considering a departure notwithstanding the government's refusal to move for such departure if the defendant can establish the fact of his substantial assistance. *Justice,* 877 F.2d at 668–69; *White,* 869 F.2d at 829. In *Justice,* the court relied on several factors for this conclusion:

First, this arrangement places discretion that has historically been in the hands of a federal judge into the hands of the prosecutor. Under the guidelines the prosecutor has the discretion whether to file a motion in a particular case. Second, whether the prosecutor has abused this discretion in refusing to file a motion in a particular case is a question that appears to be unreviewable. If a judge is powerless to depart in the absence of a motion, the prosecutor is able to exercise far greater discretion than has historically been vested in the district judge. While a district judge's actions were subject to some degree of appellate review in the pre-guidelines cases, under the new guidelines there appears to be no right of review or remedy if the prosecutor refuses to file a motion. Third, the issue of whether a defendant has provided substantial assistance to authorities may be a disputed factual issue. Section

5K1.1 basically gives the prosecutor the role of the trier of fact in resolving this issue.

*Justice,* 877 F.2d at 667. The panel in *White* looked to the § 5K1.1 Policy Statement and found that, in accord with the statutory directive in 28 U.S.C. § 994(n), 5K1.1 *requires* the government to file a motion when substantial assistance is rendered:

> Congress directed the Commission to 'assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed ... to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.' 28 U.S.C. § 994(n). To implement this directive, the Commission drafted a policy statement to assist district judges if they chose to depart from the guidelines in appropriate cases. Guideline 5K1.1, policy statement. This statement places substantial weight upon the government's evaluation of the defendant's assistance and requires that the government file a motion reciting the assistance given.... The requirement of guideline 5K1.1 that the government file a motion is predicated on the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance and that it would be the rarest of cases in which the government would be unwilling to recognize that assistance. This policy statement obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance. The provision accords with the statutory directive.

*White,* 869 F.2d at 828–29.[11]

Most courts addressing the issue, however, have ruled that § 5K1.1 and § 3553(e) are constitutional, and that the availability of these provisions only upon government motion is constitutional as well. *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); *United States v. Huerta,* 878 F.2d 89, 91 (2nd Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990); *United States v. Musser,* 856 F.2d 1484, 1487 (11th Cir.1988), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir. 1990). In *Huerta,* for example, the court stated that a due process challenge to § 3553(e) and § 5K1.1 "rests on the faulty premise that judicial sentencing discretion cannot be circumscribed." *Huerta,* 878 F.2d at 94.[12] In *Musser* the substantial

---

**11.** *But see, United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990). The *Ortez* court stated:

> The plain language of § 5K1.1 is very clear: the provision allows for a departure for substantial assistance to authorities *'[u]pon motion of the government* stating that the defendant has made a good faith effort to provide substantial assistance ...' (emphasis added). Absent such a motion by the government, the guidelines do not authorize the sentencing court to depart below the applicable guidelines range in recognition of substantial assistance.'

*Id.* Attempting to distinguish *White,* the *Ortez* court found that "[t]he Fifth Circuit's conclusion ... that § 5K1.1 does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize substantial assistance, conflicts with the plain language in § 5K1.1."

We think this extremely narrow and literal reading of § 5K1.1 and the § 5K1.1 Policy Statement is unfounded. As discussed elsewhere in this opinion, a court, by virtue of its fact finding authority, has a constitutional obligation to remedy arbitrary or bad faith conduct on the part of the prosecutor. Due process demands as much, notwithstanding the "plain language" of § 5K1.1.

Although not an issue in the present case, we also note that the "good faith" language of § 5K1.1 was eliminated as of November 1, 1989.

**12.** *But see, Curran,* 724 F.Supp. at 1243. As has been noted previously, Congress' ability to restrict or eliminate a federal court's sentencing discretion is well settled. *See Lockett,* 438 U.S. at 603–04, 98 S.Ct. at 2964. The *Curran* court recognized Congress' power to statutorily shift discretion, "[h]owever, when Congress, either directly by statute or indirectly through the Commission's Guidelines, gives the power to *initiate* the exercise of that discretion to one party *and only one party,* then something more significant than just a circumscription of the court's discretion has occurred." *Curran,* 724 F.Supp. at 1243 (emphasis in original).

However, this concern misconstrues the dynamics between due process and the Guidelines. This Court does not believe that vesting the

assistance provisions were challenged as unconstitutional "because [they] delegate[ ] to prosecutors unbridled discretion to decide who is entitled to a sentence reduction." *Musser,* 856 F.2d at 1487 (footnote omitted). The Eleventh Circuit rejected this argument noting that "the only authority 'delegated' by the rule is the authority to *move* the district court for a reduction of sentence in cases in which the defendant has rendered substantial assistance. The authority to actually reduce a sentence remains vested in the district court...." *Id.* (emphasis in original). Furthermore, underlying this conclusion, the reason the prosecution is delegated the authority to move the court is because the prosecution is in the best position to know what and how much assistance was given. *See e.g., Huerta,* 878 F.2d at 93.[13]

*Roberts* also acknowledges this reason for the wording of 5K1.1, and the resulting delegation of authority to initiate 5K motions to the government. Judge Greene notes:

> [The concerns raised regarding the prosecutorial decision whether to make a 5K motion do not] mean[ ] that a court may or should substitute its judgment for that of the prosecution on the issue of defendant cooperation. Obviously the prosecutor has superior sources of knowledge on that score.

*Roberts,* 726 F.Supp. at 1375. The distinction Judge Greene makes is clear as he continues:

> [A court] has the authority to inquire so as to enable it to make a determination, based on facts adduced by both parties, whether the prosecution has made a decision that was not arbitrary, and that the procedures leading to that decision were not unfair.

*Id.* (emphasis added).

Judge Greene proceeded to specifically find that the decision-making apparatus used by the U.S. Attorney's Office in *Rob-*

erts led to both arbitrary and unfair results. In one instance, the U.S. Attorney assigned to a particular defendant in that case could not advise the court why the defendant's claim of substantial cooperation was insufficient. In another instance, the prosecutor had actually concluded that the defendant's efforts *were* sufficient to call for a sentence reduction. In both cases, however, a "Departure Committee" composed of individuals other than counsel prosecuting the case, evaluated the assistance given. They concluded, in secret and under standards not made known to the court, that the assistance given was not of a sufficient value to warrant the filing of a 5K motion. *Id.* Furthermore, in one of the cases the reason the government did not file the 5K motion was not because the defendant failed to provide substantial assistance, but rather, because the enforcement agencies did not pursue the information provided since "something bigger, in their eyes more pressing, came up." *Id.* at 1376 (footnote omitted).

This Court agrees with Judge Greene's standard highlighted above that a court has the authority in a particular case to make a specific determination as to whether the government acted arbitrarily or in bad faith in its decision not to file a 5K motion. We do not agree, however, that the availability of the 5K procedure solely to the government is so fundamentally unfair or procedurally unfair as to violate due process. We noted in Section I above that a court has the constitutional obligation to oversee the sentencing process. In Section I we also stated that if a court found arbitrary or bad faith conduct on the part of a prosecutor in selecting charges to file against a defendant, the court must fashion a remedy that would comport with due process. The same is true with respect to the government's decision not to file a 5K motion. If in not filing such a motion, the

---

power to initiate a 5K motion solely in the government is a due process problem because the power to initiate a 5K motion does not preclude a defendant from attempting to introduce evidence to show that the government is refusing to recognize substantial assistance. *White,* 869 F.2d at 829.

**13.** *See United States Sentencing Guidelines Manual,* p. 5.41 n. 3 (1989):
> Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain.

prosecutor is found by the court to have acted arbitrarily or in bad faith, the court must fashion a remedy that comports with due process. In other words, *anyone* who exercises discretion in connection with the sentencing process, tending to deprive a defendant of life, liberty, or property, must do so without acting arbitrarily or in bad faith. *See United States v. La Guardia*, 902 F.2d 1010, 1016 (1st Cir.1990) (citing *United States v. Galan*, 1989 WL 63110 (S.D.N.Y. June 8, 1989), a case where the government did not move for a downward departure, but the court, under Fed.R. Crim.P. 32(c), nevertheless directed the prosecutor to make *in camera* disclosure as to defendant's cooperation).

We believe this opinion adopts and incorporates the reasoning of most courts that have addressed the issue of cooperation and the government's obligation to file 5K motions. Our view recognizes that Congress may vest sentencing discretion, either expressly or implicitly, in the prosecution. However, the prosecution must exercise that discretion without arbitrariness or bad faith. This opinion also follows those courts that adhere to the "plain language" of § 5K1.1, which provides that the procedure is available "[only] upon motion of the government." However, we also recognize that this plain language must take into account that the intent of § 5K1.1 is to provide the government with a method for giving credit where credit is due, and *not* to purposefully inhibit a defendant's access to the court. In other words, restricting the initiation of a 5K motion to the government passes constitutional muster as long as a court exercises its fact finding and supervisory role over the sentencing process as a whole. Our approach, therefore, necessarily entails the participation of the defendant who must be allowed to introduce evidence at the sentencing hearing which would tend to show the government's arbitrariness or bad faith in not filing the 5K motion. We believe that the burden in such a case should be on the defendant to overcome the presumption that the government "is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance." *White*, 869 F.2d at

829. Additionally, our opinion follows the well reasoned ruling of our own Fifth Circuit, namely that "[5K1.1] obviously does not preclude a district court from entertaining a defendant's showing that the government is refusing to recognize such substantial assistance." *Id.* Furthermore, we also note that this methodology serves the strong government interest of promoting and encouraging cooperation, the other intent of § 5K1.1.

Applying this standard to the present case, the Court finds that there is no evidence that the government acted arbitrarily or in bad faith. The defendants merely assert that they cooperated and that the government refused to move the Court for a departure from the Sentencing Guidelines. Defendants do not claim that their cooperation amounted to "substantial assistance." Indeed, the defendants do not claim that the evaluation of their cooperation by the government was improper at all. Although not dispositive, the Court notes that the defendants state they cooperated after they were convicted but before they were sentenced. Therefore, it is difficult to imagine, and the record is silent, how the defendants rendered substantial assistance while they were in custody between the time they were convicted and the time they were sentenced.

Accordingly,

For the reasons stated, the motion of defendants to declare the Sentencing Guidelines unconstitutional as a violation of their Fifth Amendment right to due process is DENIED.